887 A.2d 657

**Carl Eugene WARNE**

v.

**STATE of Maryland.**

**No. 2008, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Dec. 5, 2005.

136

Leonard R. Stamm (Andrew Hayduk, Goldstein & Stamm, PA, on brief), Greenbelt, for appellant.

Michelle W. Cole (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel SALMON, ADKINS and BARBERA, JJ.

SALMON, J.

On July 15, 2004, Carl Warne was indicted by a Prince George's County Grand Jury for, *inter alia,* six crimes, i.e., manslaughter by vehicle or vessel, homicide by motor vehicle or vessel while under the influence of alcohol, homicide by motor vehicle or vessel while under the influence of alcohol or under the influence of alcohol per se, homicide by motor vehicle or vessel while impaired by alcohol, and homicide by motor vehicle or vessel while impaired by drugs.[1] Warne's

---

1. The charges here at issue all constituted violations of sections of the Criminal Law Article of the Maryland Code (2002 Repl.Vol.). The specific sections of the Criminal Law Article alleged to have been violated by Warne were:

**138**

counsel filed a motion to dismiss the aforementioned six charges on the ground that prosecution of him on those charges was barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and by Maryland common law principles. The motions judge denied Warne's motion to dismiss based on the "*Diaz* exception"[2] to the Fifth Amendment.

1. **2–209 Manslaughter by vehicle or vessel**

\* \* \*

(b) A person may not cause the death of another as a result of the person's driving, operating, or controlling a vehicle or vessel in a grossly negligent manner.

2. **2–502 Homicide by motor vehicle or vessel while under the influence of alcohol** (a) A person may not cause the death of another as a result of the person's negligently driving, operating, or controlling a motor vehicle or vessel while:

(1) under the influence of alcohol[.]

3. **2–503 Homicide by motor vehicle or vessel while under the influence of alcohol or under the influence of alcohol per se.**

(a) A person may not cause the death of another as a result of the person's negligently driving, operating, or controlling a motor vehicle or vessel while:

\* \* \*

(2) under the influence of alcohol per se.

4. **2–504 Homicide by motor vehicle or vessel while impaired by alcohol**

(a) A person may not cause the death of another as a result of the person's negligently driving, operating, or controlling a motor vehicle while impaired by alcohol.

5. **2–505 Homicide by motor vehicle or vessel while impaired by drugs**

(a) A person may not cause the death of another as a result of the person's negligently driving, operating, or controlling a motor vehicle or vessel while the person is so far impaired by a drug, a combination of drugs, or a combination of one or more drugs and alcohol that the person cannot drive, operate, or control a motor vehicle or vessel safely.

6. **2–506 Homicide by motor vehicle or vessel while impaired by a controlled dangerous substance**

(a) A person may not cause the death of another as a result of the person's negligently driving, operating, or controlling a motor vehicle or vessel while the person is impaired by a controlled dangerous substance[.]

Md.Code, Crim. Law (2005).

**2.** *See Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912).

In *Whittlesey v. State,* 326 Md. 502, 525, 606 A.2d 225 (1992), the scope of the *Diaz* exception was enunciated:

[A] subsequent indictment on a second offense, otherwise barred by the Double Jeopardy Clause of the Fifth Amendment, is not barred if, at the time of prosecution for the earlier offense a reasonable prosecutor, having full knowledge of the facts which were known and in the exercise of due diligence should have been known to the police and prosecutor at that time, would not be satisfied that he or she would be able to establish the suspect's guilt beyond a reasonable doubt.

■ Warne filed this interlocutory appeal from the court's denial of his motion to dismiss.[3]

## I.

On August 3, 2003, Carl Warne was driving a motor vehicle that struck an automobile operated by Ronald Raglan, Jr. At the scene of the accident, Warne was issued a citation for negligent driving. Warne paid the fine set forth in the driving citation on August 6, 2003, at 9:53 a.m. On August 7, 2003, approximately seventeen hours after Warne paid the traffic citation, Robert Raglan, Jr., died due to injuries resulting from the August 3, 2003, accident. Warne was indicted for the six offenses here at issue approximately eleven months after Mr. Raglan's death.[4]

The Fifth Amendment to the United States Constitution provides, in pertinent part, that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." That amendment is applicable to the states through the Four-

---

3. Denial of a motion to dismiss on double jeopardy grounds is immediately appealable under the collateral order doctrine. *Caldwell v. State,* 164 Md.App. 612, 884 A.2d 199 (2005); *Parrott v. State,* 301 Md. 411, 424–25, 483 A.2d 68 (1984); *Ward v. State,* 290 Md. 76, 81 n. 4, 427 A.2d 1008 (1981); *Pulley v. State,* 287 Md. 406, 414, 412 A.2d 1244 (1980).

4. An earlier indictment charging the same crimes was *nol prossed by* the State's Attorney for Prince George's County.

teenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Spencer v. State,* 97 Md.App. 734, 738, 632 A.2d 214 (1993).

▮ The Double Jeopardy Clause prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Despite the Double Jeopardy Clause's reference "to life or limb," fines are to be treated in the same way as a prison sentence for double jeopardy purposes. *Gianiny v. State,* 320 Md. 337, 339, 577 A.2d 795 (1990).

▮▮ Section 26–204(b)(1) of the Maryland Transportation Article of the Code of Maryland (2002 Repl.Vol.) reads: "For purposes of this section, the person [receiving a traffic citation] may comply with the notice to appear [contained in the citation] by: (i) Appearance in person; (ii) Appearance by counsel; or (iii) Payment of the fine, if provided for in the citation." The traffic citation issued to Warne advised that he had the option of paying the fine mentioned in the citation without appearing in court. When a fine is paid in this manner, the defendant stands convicted of the offense. *Gianiny,* 320 Md. at 346, 577 A.2d 795.[5] Thus, Warne's payment of the citation for negligent driving was sufficient to act as a final judgment for double jeopardy purposes.

▮▮ When one is charged with different offenses arising out of the same transaction, the test for determining whether they are the "same offense" for double jeopardy purposes is the "required evidence" test, which is often called the *"Block-*

---

5. The statutory laws of this State authorize one to appear in response to a traffic citation that provides for payment of a fine by paying the fine, with the clear understanding that such payment will constitute a conviction.

\*     \*     \*

... When one has been convicted and punished for a criminal offense, he has been in jeopardy.
*Gianiny,* 320 Md. at 346, 577 A.2d 795.

*burger* test." *Gianiny,* 320 Md. at 340, 577 A.2d 795. That test is:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

In *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Supreme Court held that successive prosecutions are barred by double jeopardy principles if two offenses are the same under the *Blockburger* test. *See also Gianiny,* 320 Md. at 340–41, 577 A.2d 795 (quoting *Brown v. Ohio,* 432 U.S. at 166, 97 S.Ct. 2221) ("A lesser included offense, one which requires no proof beyond that which is required for conviction of the greater offense, is the same statutory offense as the greater offense under the *Blockburger* test. Thus, whichever is prosecuted first, 'the Fifth Amendment forbids successive prosecution ... for a greater and lesser included offense.' ").

█ As to the six charges here at issue (see n. 1, *supra* ), it is clear that, under the *Blockburger* test, negligent driving is a lesser-included offense. In *Gianiny,* the Court said:

> Negligent driving is a lesser included offense within the greater offense of manslaughter by automobile. Although negligent driving is a violation of the Maryland Vehicle Law rather than the criminal code, it is a misdemeanor by virtue of § 27–101 of the Transportation Article, which provides that it is a misdemeanor for any person to violate any provision of the Maryland Vehicle Law unless the violation is declared to be a felony. (Negligent driving is not declared to be a felony.) Manslaughter by automobile is also a misdemeanor. Art. 27, § 388.

> A comparison of the two statutes clearly demonstrates that in order to prove the greater offense, manslaughter by automobile, the State must necessarily prove the lesser offense, negligent driving. Article 27, § 388 provides:

Every person causing the death of another as the result of the driving, operation, or control of an automobile, motor vehicle, motorboat, locomotive, engine, car, streetcar, train or other vehicle in a grossly negligent manner shall be guilty of a misdemeanor. . . .

Under 21–901.1(b) of the Transportation Article, one is guilty of negligent driving if he or she drives a motor vehicle in a careless or imprudent manner that endangers property or the life or person of an individual.

It is obvious that the offense of negligent driving requires no proof beyond that which is required for conviction of manslaughter by automobile or motor vehicle. The traffic offense requires proof of the operation of a motor vehicle in a negligent manner, *i.e.,* in a careless or imprudent manner that endangers property or the life or person of an individual. Manslaughter by motor vehicle requires proof of grossly negligent driving, which necessarily includes negligent driving, plus proof that someone's death resulted from that conduct. Under the *Blockburger* or required evidence test, therefore, the offenses are the same for double jeopardy purposes, and a conviction of the lesser offense bars a subsequent prosecution for the greater.

*Gianiny,* 320 Md. at 343–44, 577 A.2d 795.

Based on the above, it can be seen that, but for the *Diaz* exception, prosecution of Warne for the homicide and manslaughter charges at issue would have been barred on the basis of double jeopardy.

■ When the *Diaz* exception is at issue, the question to be answered is: Would the prosecutor *at the time of prosecution for the earlier offense* (here, negligent driving) be satisfied "that he or she would be able to establish the suspect's guilt beyond a reasonable doubt" of the greater offense? *Whittlesey, supra,* 326 Md. at 525, 606 A.2d 225. If the answer to that question is no, then the *Diaz* exception applies. The application of that test to this case revolves around the answer to this subordinate question: When was the "time of prosecution" of the negligence charge? *Id.*

As the Court held in *Briggeman v. Albert,* 322 Md. 133, 586 A.2d 15 (1991), the payment of a traffic ticket constitutes a "consent to [a] conviction." *Id.* at 137, 586 A.2d 15. The point where the State ceased to prosecute Warne for his negligent driving was at the point Warne consented to a conviction. Therefore, time of prosecution by the State of the negligence charge was three days, i.e., August 3 to 6, 2003. During that three-day period, a prosecutor would not have been able to establish Warne's guilt of any of the six charges at issue, because the victim (Robert Raglan, Jr.) was not yet dead, and proof of the victim's death was a necessary element to be proven as to each of the six charges. Thus, the facts in this case fit squarely within the ambit of the *Diaz* exception.

Warne argues, at least impliedly, that the "period of prosecution" was longer than three days because, purportedly, he could have, within thirty days of his consent to a conviction, filed an appeal to the circuit court. According to Warne, the period of prosecution expired twenty-nine days after the victim's death, i.e., on September 2, 2004.[6] There is no merit to this contention because Warne never filed an appeal. Thus, in no sense of the word was he being "prosecuted" by the State during the twenty-nine-day period after Mr. Raglan's death.

Several Maryland cases demonstrate how the *Diaz* exception works in practice. In *Gianiny,* the defendant was driving a motor vehicle involved in an accident that resulted in the death of another person. Various traffic citations were issued to Gianiny for the traffic offenses, including a citation for

---

**6.** Although the matter need not be decided, it is far from clear that a party who does not appear before a District Court judge but instead pays a fine and thus consents to a conviction can thereafter appeal his or her conviction to the circuit court. Arguably at least, this would be analogous to a party in a civil case attempting to appeal a consent judgment—which is not permitted. *See Long v. Runyeon,* 285 Md. 425, 429–30, 403 A.2d 785 (1979) ("The law in this State is that no appeal will be from a consent judgment."); *Adm'r Motor Vehicle Adm. v. Voyt,* 267 Md. 660, 664, 299 A.2d 1 (1973) (To have standing to maintain an appeal one must be aggrieved by the decision from which the appeal is taken.); *Casson v. Joyce,* 28 Md.App. 634, 637 n. 3, 346 A.2d 683 (1975) (same).

negligent driving. 320 Md. at 340, 577 A.2d 795. At the time those citations were issued, the victim was already dead, and the police officer who issued the citation knew that the victim had died. *Id.* at 341 n. 3, 577 A.2d 795. Prior to being indicted for motor-vehicle manslaughter, after having been forewarned that he was about to be indicted, Gianiny paid the negligent driving citation. *Id.* at 340, 577 A.2d 795. The *Gianiny* Court held that negligent driving was a lesser-included offense of motor-vehicle manslaughter and that prosecution of the indictment returned against defendant for motor-vehicle manslaughter was barred by Maryland common law and the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. *Id.* at 347–48, 577 A.2d 795.

In *Whittlesey, supra,* the defendant was convicted for the murder of one Jamie Griffin. 326 Md. at 504, 606 A.2d 225. Jamie disappeared on April 2, 1982, but his remains were not recovered until March of 1989. *Id.* at 505, 606 A.2d 225. In the interim, Whittlesey was convicted in February 1984 of robbing Jamie of several articles of property that were on his person at the time of his disappearance. In *Whittlesey,* the central issue addressed by the Court was whether the defendant's prosecution for felony murder was barred by his prior conviction of the predicate felony at issue, i.e., robbery of Jamie. Resolution of that issue depended upon the applicability of the *Diaz* exception. The *Whittlesey* Court held:

> We think, *in the light of the facts which were known at the time of the robbery indictment,* and considering that there were facts which were then unknown despite the exercise of due diligence, a reasonable prosecutor would not be satisfied that he or she would be able to establish Whittlesey's guilt [of murder] beyond a reasonable doubt. Thus, the *Diaz* exception applies and serves to permit prosecution on the murder indictment. The Double Jeopardy Clause interposes no bar to prosecution under that indictment.

326 Md. at 528, 606 A.2d 225 (emphasis added).

In *Spencer v. State,* 97 Md.App. 734, 632 A.2d 214 (1993), the defendant was convicted by a jury on November 4, 1991, of

assault with intent to murder, assault with intent to disable, assault with intent to rob, and a related handgun offense. *Id.* at 736–37, 632 A.2d 214. On November 20, 1991, which was a little over two weeks after the jury verdict but prior to sentencing of Spencer, the victim, Effiok Essiet, died due to what the State contended were injuries sustained as a result of Spencer's assault. *Id.* at 737, 632 A.2d 214. Thirteen days after Mr. Essiet's death, appellant was sentenced to thirty years' imprisonment as a consequence of his November 4, 1991, convictions. Thereafter appellant was indicted for first-degree felony murder and second-degree murder based on Mr. Essiet's death, along with the same conduct that led to the earlier assault convictions. *Id.* at 737, 632 A.2d 214. The sole issue presented in the *Spencer* case was whether the *Diaz* exception to the prohibition against double jeopardy was applicable. *Id.* at 738–39, 632 A.2d 214. The resolution of the issue turned on the answer to a subordinate question that was discussed, *in dicta,* in *Gianiny, supra,* 320 Md. at 341 n. 3, 577 A.2d 795, but not decided, *viz.*:

At what point along the continuum between indictment and trial and conviction for the lesser charge the additional facts necessary to sustain the greater charge must have occurred or been discovered in order for the prosecution of the greater charge to be barred by conviction of the lesser is not firmly established. Justice Brennan's concurring opinion in *Ashe v. Swenson,* 397 U.S. 436, 453 n. 7, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), suggests that if a crime is not completed or not discovered, despite diligence on the part of the police *"until after the commencement of a prosecution for other crimes arising from the same transaction, an exception to the same transaction rule should be made to permit a separate prosecution."* In *Blackledge v. Perry,* 417 U.S. 21, 29 n. 7, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court referred to *Diaz* as a case in which it was impossible to charge the defendant with a more serious crime "at the outset." The dissenting opinion of Justice Stevens in *Garrett v. United States,* 471 U.S. 773, 105 S.Ct.

2407, 85 L.Ed.2d 764 (1985), suggests that "at the outset" may be at time of indictment for the lesser offense. *Id.* at 341 n. 3, 577 A.2d 795 (emphasis added and some citations omitted).

The *Spencer* Court, after a thorough examination of pertinent authority, held:

> Our review of the relevant case law convinces us that in a case such as this, where a victim expires following the defendant's convictions for lesser included assault offenses, but the victim's death occurs prior to sentencing on those convictions, a subsequent prosecution on murder charges is not barred by the Fifth Amendment's Double Jeopardy Clause. The Supreme Court and the Court of Appeals have not directly and explicitly answered this question, but have intimated on several occasions that the relevant inquiry in determining the applicability of the *Diaz* exception allowing a second prosecution *is whether the State knew, or through due diligence should have known, of facts establishing the accused's guilt at the time that the trial in the original prosecution is commenced.*

*Spencer,* 97 Md.App. at 739, 632 A.2d 214 (emphasis added).

Argument by the State in the subject case that the *Diaz* exception is applicable is even stronger here than in either *Whittlesey* or *Spencer, supra,* because, in the case *sub judice,* at the time the prosecution for the first offense commenced and even when it ceased—a reasonable prosecutor would not have been satisfied that he or she would be able to establish Warne's guilt of the greater offenses beyond a reasonable doubt because, at that point, the victim had not yet died. In both *Spencer* and *Whittlesey,* the victims were dead before the prosecutions for the lesser offenses ceased.

Appellant contends that *Spencer* was wrongly decided because, purportedly, it conflicts with what the Court of Appeals said in *Ellison v. State,* 310 Md. 244, 528 A.2d 1271 (1987).

Clinton Ellison and Tyrone Little, a fellow inmate at the Maryland Penitentiary, were charged with the murder and robbery of a third inmate. *Id.* at 245–46, 528 A.2d 1271. On

the date that Little's trial was set to commence, he entered into a plea agreement with the State. The agreement was that Little would receive a twenty-five-year sentence after he pleaded guilty to second-degree murder. Little pleaded guilty, as promised, and received the agreed-upon sentence. After sentencing, he was advised that he had the right to apply to the Court of Special Appeals for leave to appeal; he was also advised, among other things, that he had thirty days in which to request a three-judge panel made up of circuit court judges to review his sentence.

Six days after Little was sentenced, the trial of his co-indictee, Ellison, commenced. *Id.* at 246, 528 A.2d 1271. Little was called to the stand as a witness for the defense. *Id.* at 247, 528 A.2d 1271. Little refused to testify on the ground that his answers might tend to incriminate him. *Id.* The trial court upheld Little's claim of privilege, and as a consequence, Little did not testify. Subsequently, Ellison was found guilty of first-degree murder and robbery. *Id.* at 247, 528 A.2d 1271. Ellison contended on appeal that the trial court erred in upholding Little's privilege against self-incrimination because, purportedly, Little "could not have incriminated himself with the charge for which he had been indicted because he had already been sentenced on the murder charge and the other charges had been *nol prossed.*" *Id.*

The *Ellison* Court affirmed the judgment of conviction against Ellison and ruled as follows:

> In sum, within a thirty-day period after the sentence in a criminal case, and, if appellate review or sentence review is sought during that period, thereafter during the pendency of such review, the criminal judgment is not so finalized that the possibility of future proceedings on the charges is remote. Therefore, during that period, the danger is real that the testimony of the sentenced individual could incriminate him with respect to the charges.

*Id.* at 258, 528 A.2d 1271.

Warne argues:

Contrasting *Spencer* and *Ellison*, it becomes clear that the Court of Appeals has taken a more expansive view than the Court of Special Appeals of the time period that a defendant is in jeopardy. Under *Ellison*, the accused is potentially in jeopardy, and may therefore claim the protection of the Fifth Amendment, until he or she has waived the right to an appeal.

The main flaw in the foregoing argument is that it assumes, albeit impliedly, that if Warne remained in jeopardy for the negligence offense after the victim died, then the *Diaz* exception would be inapplicable. Warne cites no case from any jurisdiction that supports that assumption. In any event, the *Ellison* and *Spencer* cases are not at odds. *Spencer* concerned the application of the *Diaz* exception. The *Ellison* case had nothing whatsoever to do with that exception. The resolution of the issue presented in *Spencer* did not, in any way, revolve around the issue of whether Spencer was "in jeopardy" prior to his sentencing. It would be obvious to anyone that he was. As already mentioned, the question that was resolved in *Spencer* was the one discussed *in dicta* in *Gianiny*, i.e., "[a]t what point along the continuum between the indictment and trial and conviction for the lesser charge the additional facts necessary to sustain the greater charge must have occurred or been discovered in order for the prosecution of the greater charge to be barred by conviction of the lesser...." *Gianiny, supra*, 320 Md. at 341, 577 A.2d 795. *Spencer* holds that the crucial point is at the commencement of the trial in the original prosecution. *Spencer*, 97 Md.App. at 739, 632 A.2d 214. That interpretation of the *Diaz* exception is not "more expansive" than the interpretation by the Court of Appeals. *See Whittlesey, supra*, 326 Md. at 525, 606 A.2d 225.

Warne argues that "the State had twenty-nine days to prosecute ... [him] after the decedent died and failed to do so. Therefore, further proceedings are barred by double jeopardy." In support of this argument, Warne claims that the State, during the twenty-nine days following his payment of the fine, could have moved "to vacate the sentence or to *nol*

*pros* the case without running afoul of the double jeopardy bar."

Appellant cites no authority, and we know of none, that would have allowed the State to *nol pros*[7] a charge after the defendant has consented to a conviction of that charge. Because no appeal was filed, there were no charges to *nol pros*, nor was there any possible ground for the State to move to vacate the sentence after the defendant consented to the conviction. But, even if we were to assume, *arguendo*, that the State could have taken the actions suggested by Warne, the State would have no possible reason to do so. At the time Warne consented to the conviction for negligent driving, the State's prosecution had ceased insofar as the negligent driving charge was concerned, and under the *Diaz* exception (as interpreted by *Spencer* and numerous cases discussed therein), the Double Jeopardy Clause did not prevent the State from bringing the six charges that the trial court here refused to dismiss.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

7. Maryland Rule 4–247 reads:

**Nolle prosequi.**

(a) **Disposition by nolle prosequi.** The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court. The defendant need not be present in court when the nolle prosequi is entered, but in that event the clerk shall send notice to the defendant, if the defendant's whereabouts are known, and to the defendant's attorney of record.

(b) **Effect of Nolle prosequi.** When a nolle prosequi has been entered on a charge, any conditions of pretrial release on that charge are terminated, and any bail bond posted for the defendant on that charge shall be released. The clerk shall take the action necessary to recall or revoke any outstanding warrant or detainer that could lead to the arrest or detention of the defendant because of that charge.