29 A.3d 663

**Joseph Julian DiMEGLIO**

v.

**STATE of Maryland.**

**No. 2783, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 29, 2011.

Dennis Murphy (Murphy & Price, LLP, on the brief), Annapolis, MD, for appellant.

James E. Williams (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: EYLER, JAMES R., HOTTEN, FREDERICK J. SHARER (Retired, Specially Assigned), JJ.

FREDERICK J. SHARER (Retired, Specially Assigned), J.

Appellant, Joseph Julian DiMeglio, avers in his brief that in the jurisdictions of this State where "DUI/drug courts" function it is common for sanctions to be imposed by those courts, and that frequently defendants are subsequently further punished upon violation of the conditions of probation imposed by sentencing judges. Because that is precisely the outcome of his alcohol-related traffic violations, he argues that his Fifth Amendment double jeopardy rights have been violated.

Appellant was arrested and charged, in the District Court for Anne Arundel County, with various offenses, including driving while impaired by alcohol. This case was transferred to the Circuit Court for Anne Arundel County on appellant's demand for a jury trial. On October 1, 2009, and November 5, 2009, following hearings, the circuit court denied appellant's motion to dismiss the case on double jeopardy grounds.

Thereafter, the parties agreed to proceed on a not guilty plea on an agreed statement of facts, and the court found appellant guilty of driving while impaired by alcohol. Appellant was subsequently sentenced to one year and 60 days, which was suspended in favor of probation, with conditions.

Appellant timely appealed and, as slightly rephrased, presents the following questions for our review:

1. Did the motions court err in denying appellant's motion to dismiss on double jeopardy grounds?

2. Is a knowing and intelligent waiver of the right to be free from double jeopardy required when a defendant agrees to participate in DUI Court?

For the following reasons, we shall affirm.[1]

---

1. Appellant's questions presented in his brief are:

## FACTUAL and PROCEDURAL HISTORY

A chronology of pertinent events with respect to the District Court and circuit court cases follows.[2]

On May 26, 2007, appellant was charged in the District Court for Anne Arundel County with various offenses, including driving while under the influence (Case Number EG44342). On January 30, 2008, and prior to trial, this case was referred to the DUI Court for Anne Arundel County. Although we have not been provided with a transcript of appellant's first appearance in the DUI Court, the record indicates that, in exchange for appellant's agreement to plead guilty to a violation of § 21–902(b) of the Transportation

---

I. Whether any punishment subsequent to that imposed in the Drug Court proceedings relevant to this case, now common to the trial courts of Maryland, violate Appellant's rights against double jeopardy?

A. Whether the circuit court erred in denying Appellant's motion to dismiss as to Counts II and IV under the federal *Blockburger* same elements test?

B. Whether the circuit court erred in denying Appellant's motion to dismiss as to all counts if the Grady same conduct test is retained by the Maryland common law?

II. Whether the absence of an intelligent knowing waiver of a fundamental right requires reversal of the conviction under Count IV?

**2.** Because appellant has had prior cases in both the District Court and circuit court, the record is somewhat confusing. However, the parties agree that the two cases that are the subject of this appeal are District Court Case Number EG44342, and Circuit Court Case Number 02–K–09–001672.

The record on appeal contains the background information about Circuit Court Case Number 02–K–09–001672. We granted the State's motion to supplement the record with information from District Court Case Number EG44342. We also take judicial notice, pursuant to Md. Rule 5–201, of further information about the District Court case from the records of the Maryland Judiciary that are made available by the Administrative Office of the Courts on the Judiciary website. *See www. mdcourts.gov* From these records, we were able to ascertain that appellant was found guilty in District Court Case Number EG44342 on August 20, 2009. Appellant appealed that guilty plea and sentence to the Circuit Court and that appeal was captioned in the Circuit Court for Anne Arundel County as Case Number 02–K–09–001898. We will provide further detail in the chronology that follows.

Article [3], the parties and the court entered into the following agreement:

## DUI/DWI TREATMENT COURT

This agreement, between the Defendant, the State's Attorney and the Court, is intended to secure the participation of the defendant in the DUI/DWI Treatment Court program. In consideration for the opportunity to participate in the program, the defendant agrees to the following special conditions:

1. Defendant agrees to sign all authorizations for the release of information requested. Defendant realizes that this condition is necessary to coordinate treatment and any other needed services and to monitor compliance.

2. Defendant agrees to keep all treatment and other required appointments scheduled by Clinical Care Monitoring Program staff (CCM), treatment and other resource providers and to attend all [s]cheduled court appearances for progress reviews.

3. Defendant agrees to submit to drug and alcohol testing as directed.

4. An individualized treatment plan will be developed with the defendant and contain his/her requirements and stated goals and objectives. The treatment plan will indicate schedule and type of counseling, substance abuse treatment, and other areas of need such as health, employment and education. The Defendant agrees to participate in treatment and other recommended services. The Defendant agrees to pay for all services as appropriate.

Defendant agrees that if he/she fails to comply with the DUI/DWI Treatment Court requirements, or tests positive for a prohibited substance, the treatment or other service provider may immediately make adjustments:

a. Increase treatment or service intensity

---

**3.** That section provides that "[a] person may not drive or attempt to drive any vehicle while impaired by alcohol." Md.Code (1977, 2009 Repl.Vol., 2010 Supp.), § 21–902(b)(1) of the Transportation Article. ("T.A.").

b.  Increase drug/alcohol testing

c.  Increase progress review schedule

d.  Refer to other treatment or service provider, and

e.  Any other sanctions, including termination from treatment and/or other services. Defendant agrees to comply with the new conditions until review by the Court at the next scheduled progress review. Defendant will have the opportunity to be heard at that review. The Court is not limited by the above sanctions in the event of a finding that this agreement has been violated. The Court can impose sanctions including community service, daily monitoring, house arrest, incarceration and termination from the DUI/DWI treatment court program. The length of the program and conditions of any probation will reflect the success of the defendant's treatment outcome, recommended continuing care, criminal record, and the Court's desire to help the defendant maintain a productive, sober life.

Appellant began treatment pursuant to the agreement, and appeared in the DUI court on what appears to have been a monthly basis. Then, on January 18, 2009, appellant was again arrested and charged in the instant case with various offenses, including, driving while impaired by alcohol. This case would later be transferred to the circuit court on appellant's demand for a jury trial.

Four days later, on January 22, 2009, as part of his scheduled review in the DUI Court, appellant appeared before the District Court in Case Number EG44342, the earlier case. (Hon. Thomas J. Pryal, presiding). At that hearing, the court informed appellant that he did not have to talk about the new charges, and that "[y]ou don't have to talk about the facts of the new case, understand that. That's a pending case, . . . with legal implications, but what's been going on since I last saw you." Appellant replied that DUI Court had been helping him and that, "[n]o matter what the outcome of the other trial might be, but I would hope that you wouldn't put me out of this program."

Appellant informed the court that the new charges (the case that is the subject of this appeal) occurred in Anne Arundel County when he "rear-ended" a vehicle near Hilltop and Bay Ridge Avenue. Appellant told the court that he had been at his sister's house earlier that day and had consumed a number of beers. Appellant decided to drive home and "totaled" a company vehicle.

The court addressed appellant as follows:

THE COURT: But I cannot understand, I have to just say this because I can't let this end without it, I understand you have a terrible problem that you are dealing with in alcoholism and that is something that's difficult to control, if it can be controlled, but you don't have to drive. That's the problem here. Is if you had some alcohol at your sister's house, and I don't know why they would even not knock that drink out of your hand, I can't understand it, but I don't know what the situation is, but whatever. You drink there, you didn't have to drive. And that's the problem that's going to haunt you at this point, not the drinking part.

But, you know, if you had come in here and said, you know, I had a couple of beers watching the game, that's obviously something that we can deal with much more easily than what's going on here, okay? I'm not going to crucify you for this, but I just have to say that because it's something you have to recognize as part of my job here. Okay? I don't know what'll happen in terms of the rest of this program, because a lot of that's up to the State and what they want to do with this new charge.

MS. LASEAR [4]: They're not going to roll this in.

THE COURT: I'm sure they won't. Okay.

MS. LASEAR: (apparently addressing appellant) But you're going to have to—you will have to court [sic] on this charge. They will not roll this new charge in. They already said that.

---

4. The record is not clear as to the identity of Ms. Lasear. Neither a prosecutor nor appellant's defense counsel were present at the hearing on January 22, 2009.

APPELLANT: I don't even know what that means.

MS. LASEAR: They will not make your new charge part of the DUI court program. You are going to have to go, it's suggested you get an attorney or a public defender, and you are going to have to go to trial for this new case. And the judge, I doubt it will be Judge Pryal, whatever judge it is—

THE COURT: It won't be me.

MS. LASEAR:—it will just be a whole other case. It will have nothing to do with this. The State will not allow that case to be part of this. I've already talked to them.

THE COURT: All right. I can tell you also that my guess is that at some point they are going to ask that you be removed from this program. That hasn't happened at this point, at least they haven't said anything. But if history is any indicator I believe that's what will happen, okay? So that's just something we are going to have to deal with as we move forward, we are not going to deal with that today, but you need to keep that in mind, okay? I'm sorry about all this, okay?

\*       \*       \*

THE COURT: I have, you know, like I said, I have good feelings about you, I like you personally, that doesn't change whatever is going to happen though. And, you know, it's devastating for everyone involved and I don't want to linger on the devastating part of it, okay? Because all of us are going to have to get over that and decide what we are going to do next, okay? So you can deal with SCRAM, okay? Obviously where there has to be a sanction I'm going to revoke your PR for the weekend, Friday and—

APPELLANT: I don't know what that means, Your Honor.

THE COURT: I'm going to impose a sanction for your using, for drinking. Getting this DWI.

APPELLANT: Oh. Yes, sir.

THE COURT: All right? So I'm going to revoke your PR. I'm going to have you locked up at the detention center for this weekend. Friday at 6:00.

APPELLANT: You are going to have me locked up?

THE COURT: I am. Yes. Friday at 6:00 until Sunday at 6:00.

At that point, the court inquired whether appellant had a lawyer and appellant replied that he did. After further discussion about treatments appellant had undertaken, the following ensued:

THE COURT: All right. Well, there are things in your life other than this that I'm sure you would be proud of. You said you had a good education, you have a lot of things. This—getting DWI's is obviously a major problem, it doesn't have to define you either. And, you know, obviously you are going to have to deal with this. I don't know what's going to happen with the case. I don't know whether the State has a good case or bad case, I don't know how that's going to work out, okay? I have no idea.

What I do know is that it was something that you shouldn't have been doing while you were on this program, okay? I can deal with that and so the sanction is going to be imposed. And what's going to happen in terms of the rest of the program, again, I don't know.

The court stated: "[a]ll right, here is what we are going to do, I've imposed a sanction, we're going to set a review, February 5th." The court suggested that appellant contact a lawyer and return to court on February 5, 2009.[5]

---

**5.** The record is not entirely clear when appellant served his sentence at the detention center. As indicated, at the conclusion of the January 22, 2009 hearing, appellant was directed to return to DUI Court on February 5, 2009, with his attorney. However, during his testimony before the motions court in this case, *i.e.*, Circuit Court Case Number 02–K–09–1672, defense counsel proffered, and appellant testified, that he actually served his sentence following the February 5, 2009 hearing where he was accompanied by defense counsel. We note that defense counsel informed the court on November 5, 2009, that counsel attended a number of hearings in DUI Court, but "[appellant] and I were both confusing some of what happened with the later hearings and what happened in District Court on the day that he actually got the weekend in jail from Judge Pryal, which is the basis of our motion."

It is clear that appellant was caused to serve time in jail for having violated the terms of his DUI court agreement, imposed following the prior violation, as a result of having been charged with a subsequent violation.

On July 27, 2009, appellant prayed a jury trial in what was to become the instant case. This case was transferred to the Circuit Court for Anne Arundel County, where it was captioned as 02–K–09–001672.

According to the record now before us, approximately one month later, on August 20, 2009, appellant was found guilty in District Court Case Number EG44342, the case that was the subject of the DUI Court agreement, of driving a vehicle while impaired by alcohol. Appellant was sentenced to 120 days with credit for time served. Appellant immediately appealed to the Circuit Court for Anne Arundel County, where it became Case Number 02–K–09–001898. Sentence in that case was stayed pending the appeal. Although not entirely clear, we presume that the conviction served to terminate appellant's participation in the DUI Court.

On October 1, 2009, appellant moved to dismiss the instant case, (Circuit Court Case Number 02–K–09–001672), on double jeopardy grounds. A hearing was held the same day on appellant's motion, (Hon. Paul A. Hackner, presiding), at which appellant testified on his own behalf.

The transcript of that hearing revealed the following: appellant admitted that he was arrested on January 18, 2009 (the current offense), and appeared in the DUI Court on January 22, 2009. He also admitted that he had a "colloquy with the Court" on January 22, 2009, and testified that there was a discussion whether he had been drinking, and whether he had been arrested and charged as a result.

Appellant recalled that, at that time, Judge Pryal told him to return to court with counsel on February 5, 2009. According to appellant, there was a discussion at this hearing concerning a possible sanction for the January 18, 2009 incident. Responding to questions from his attorney, appellant testified that "you gave an argument to Judge Pryal that I had not

been found guilty of any other charges and that a sentence shouldn't be imposed upon me because a trial was going to be eminent [sic] for the incident. . . ." Nonetheless, appellant said, Judge Pryal sentenced him to a weekend in jail, which he served that weekend. Appellant concluded his direct examination by agreeing with counsel that he had expressed concerns whether it was "constitutional" for him to be subject to further punishment.

On cross-examination, appellant testified that he told Judge Pryal that "I had thought that I had drank four beers." After this, Judge Pryal "sanctioned me and sent me to jail." Appellant also confirmed that he told Judge Pryal he had been charged with drunk driving.

Following appellant's testimony, the motions court heard argument. The court asked appellant's counsel if the act of consuming alcohol violated the terms of the DUI Court agreement. Counsel declined to comment, stating "there hasn't been any evidence to that submitted, I'll say that much." Defense counsel contended that "[d]rinking is one of the elements of the offense of drinking and driving." Therefore, counsel continued, "the behavior that he was being sanctioned for is embraced in the offense that he's charged with here today."

The prosecutor responded that appellant had not established that he was being prosecuted twice for the same offense. The court, over objection, took judicial notice of how DUI Court works, stating that he served on the Drug Court for four years. The prosecutor contended:

Well, Your Honor, then you know that when somebody is on DUI Court or Drug Court they have not yet been sentenced, the case is not over, and that person is actually in the status of being on pretrial release.

When the Defendant went in and admitted to Judge Pryal that he had had four beers, he was on pretrial release, he acknowledged to having four beers, and we use the word sanction of course because this is just part of the terminolo-

gy that we use when we're in DUI Court or DWI Court. In fact, his pretrial release was revoked, Your Honor.

We do this all of the time. When people are out on bond and they are awaiting some portion of their trial to come and they violate a condition of that pretrial release we sanction them. We take some action. We revoke that pretrial release and we incarcerate them. Never is this held to be any type of violation of their constitutional right against double jeopardy. Never is it held to be a second prosecution for the same offense.

The court denied the motion stating:

Even if I were a complete unknown or even if the Drug Court were completely unknown to me and I didn't take judicial notice of anything I would reach the conclusion that what we have here is Judge Pryal either lawfully or unlawfully sanctioned your client for his having admitted to drinking four beers. So maybe if it wasn't a condition—let's pretend it wasn't a condition of Drug Court or DUI Court that your client abstained from using any substances, including alcohol—let's engage in that hypothetical—then at best Judge Pryal knew of some conditions that I don't know, because I'm not taking judicial notice of it. Or at worse Judge Pryal did something that was unlawful. But whatever he did he did the [sic] as a result of an admission that was made and not as a result of a conviction for a crime that has not yet before [sic] tried, i.e., the fifth DUI.

So it's not a situation it seems to me where your client had been doubly punished or faces the prospect of being doubly punished for the same offense. Clearly the facts may coincide, and clearly the same act that gave rise to a sanction in the Drug Court may also be a part of the operative set of facts that might give rise to a conviction if he is convicted in this court on the DUI that he's presently charged with.

But I think the case law is replete with instances where the same series of conduct or same acts may subject somebody to multiple sanctions. That could include administra-

tive sanctions, getting your license revoked, that's been argued ad nauseam as to whether that's considered double jeopardy, parole revocations, probation revocations, and I think consistently the courts have held that that does not simply because one set of events give rise to multiple sanctions that does not invoke the double jeopardy clause of the constitution.

Thereafter, on October 6, 2009, appellant filed a motion for reconsideration, accompanied by a transcript of the January 22, 2009 hearing in District Court Case Number EG44342. The State responded, and the court conducted a hearing on the motion on November 5, 2009. No testimony was received at this hearing, but the court did admit the transcript from the January 22, 2009 hearing in the DUI Court.

While recognizing that it was likely that the conditions of DUI Court included that appellant obey all laws and not drink, defense counsel continued to assert that the weekend in jail imposed by the DUI Court amounted to a sanction for drinking and driving, the basis of the new charges. Counsel further contended that appellant did not waive any rights to challenge this prosecution on double jeopardy grounds by entering into the DUI Court agreement. The court did not consider waiver to be an issue.

The State responded that appellant's appearance before the DUI Court on January 22, 2009, was not a "prosecution." As we have noted, neither defense counsel nor the prosecutor were present at that hearing before Judge Pryal. The State argued:

> The State didn't request any type of sanction, incarceration, fine, additional treatment, the State was not even there, Your Honor. There was no prosecution, there was no charging document, there was no evidence presented by the State. In fact the only evidence presented was by Mr. Dimeglio himself.
>
> \*  \*  \*
>
> We're then brought to the matter of whether he was being punished. And Your Honor, I would ask you to look

at the procedural posture of the case at that point. He was in DUI Court, he had pled guilty at that point, he had not been sentenced. He was out on his own personal recognizance having not been sentenced. There were conditions on that. He was to follow the terms of the DUI Court, including go to treatment, including no new charges, including follow the instructions of your case manager, and don't consume alcohol. Don't consume alcohol.[6]

The State further suggested that the weekend in jail was equivalent to a revocation of pretrial release for violation of a condition. After hearing further argument from appellant's counsel, and after making clear that, during the DUI Court hearing, Judge Pryal stated: "I'm going to impose a sanction for your using, for drinking. Getting this DUI," the court denied appellant's motion for reconsideration. The court stated:

So in this case we don't have that. In this case what we have is a violation of a conditional release that was the condition upon which the Defendant was allowed to participate in a Drug Court. Unquestionably the violation consisted of some part of the same set of facts or the same conduct which will ultimately have to be proved by the State in this current DUI case, but it was a sanction imposed in connection with the previous case, not with the current case.

In other words, Judge Pryal could not have even if he had wanted to sentenced the Defendant to anything more than what he had suspended or what he could have sentenced him for in the first case. He could not have put him on probation in this case. All he had was what was allowable under the preexisting case.

---

6.  Although the State proffered that appellant had pleaded guilty prior to agreeing to be in DUI Court, we have been unable to confirm that in this record. The DUI Court Treatment plan does indicate that, on February 5, 2008, appellant "AGREES TO: Plea [sic] Guilty 21–902(B) Subsequent Offender." That agreement is signed by appellant, appellant's counsel, the prosecutor and Judge Pryal. Notably, there is no transcript of the hearing on February 5, 2008, in the record on appeal. The record further indicates that appellant subsequently pleaded guilty to a violation of T.A. § 21–902(b) on August 20, 2009.

The question of a waiver and so forth I think is one that we don't even get to. Because as I say, I don't believe that Mr. Dimeglio's Fifth Amendment rights have been violated, and it's not a question of whether the [sic] waived them or not. So the revocation of bail in the Drug Court context is a sanction for violating the—what we I think referred to last time as case number four—whereas in this case, which is case number five, there had not yet been jeopardy attached, and so there is no basis to grant the motion to dismiss . . . and the motion for modification will be denied.

On November 18, 2009, before Hon. William C. Mulford, II, appellant pleaded guilty in Case Number 02–K–09–1898—the prior charge—to driving while impaired, and entered a not guilty plea on an agreed statement of facts in the instant case to driving while impaired. Because appellant raises no challenge to the sufficiency of the evidence in the instant case, we need not detail the agreed statement of facts. *Washington v. State,* 190 Md.App. 168, 171, 988 A.2d 61 (2010).

This timely appeal followed.[7]

## DISCUSSION

### 1. *Double Jeopardy*

Appellant's primary contention on appeal is that the motions court erred in denying his motion to dismiss on double jeopardy grounds. He argues, as he did below, that the sanction imposed by the DUI Court in Case Number EG44342—a weekend in jail—was, in fact, punishment for his act of

---

**7.** On January 28, 2010, appellant was sentenced in both cases. In Circuit Court Case Number 02–K–09–1898, the case that was originally in the DUI Court, appellant was sentenced to one year, with all but four months suspended, with credit for time served. In Circuit Court Case Number 02–K–09–1672, this case, appellant was sentenced to one year and 60 days, consecutive to the sentence imposed on Case Number 02–K–09–1898, all of which was suspended. This sentence was to be followed by three years supervised probation upon release, with numerous special conditions. The court also imposed several conditions during appellant's probationary period, including abstaining from alcohol.

drinking and driving in this case. Therefore, he concludes, the court's sentence in this case amounted to a violation of his right to be free from double jeopardy.

The State again responds that the sanction imposed by the DUI Court was solely for appellant's failure to abide by the terms of the DUI Treatment plan. The State posits that jeopardy did not attach in this case when appellant appeared in the DUI Court on January 22, 2009.

■ The Double Jeopardy Clause provides that no person shall "be subject to the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amend. V. This constitutional guarantee is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *State v. Long,* 405 Md. 527, 535–36, 954 A.2d 1083 (2008) (citing *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). The Court of Appeals has stated that the "double jeopardy analysis is a two-step process. We determine first whether the charges arose out of the same act or transaction, and second, whether the crimes charged are the same offense." *Jones v. State,* 357 Md. 141, 157, 742 A.2d 493 (1999). The Double Jeopardy Clause

> prohibits three distinct abuses: 1) the second prosecution for the same offense after acquittal; 2) the second prosecution for the same offense after conviction for that offense; and 3) the imposition of multiple punishments for the same offense.

*Taylor v. State,* 381 Md. 602, 610, 851 A.2d 551 (2004). It is the latter with which we are primarily concerned in this appeal.

Here, the charges in District Court Case Number EG44342, concerning an incident of driving while impaired on May 26, 2007, and Circuit Court Case Number 02–K–09–1672, concerning an incident of driving while impaired on January 18, 2009, are not the same act or transaction. This case does not involve a second prosecution for the same offense.

Appellant asserts that the category of double jeopardy "applicable to this case is that which prohibits multiple punish-

ments for the same offense." Appellant's argument is that the sanction imposed by the DUI Court on January 22, 2009, was punishment for the subsequent charges.

The State responds that appellant was not punished in *this case* on January 22, 2009, (when the sanction was imposed by the DUI court) because appellant was not then in initial jeopardy in this case.

The Court of Appeals has explained:

The Supreme Court has held "that a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge" or that " 'jeopardy attaches' when the trial commences. . . ." *United States v. Jorn,* 400 U.S. 470, 479, 480, 91 S.Ct. 547, 554, 555, 27 L.Ed.2d 543 (1971). The problem in particular cases is in determining when a defendant is "put to trial" or when "the trial commences."

It is generally held that, with respect to a jury trial, a defendant is placed in jeopardy when the jury is selected and sworn. . . .

As to a non-jury trial, the normal rule is that the trial commences, and thus jeopardy attaches, when the judge begins to hear or receive evidence. Usually, this will be when the first witness begins to testify. However, it could be when documentary evidence is submitted, such as a stipulation or the record of prior proceedings, . . ., or when the defendant pleads guilty to the charges and thus establishes his guilt, . . . .

*Blondes v. State,* 273 Md. 435, 444–445, 330 A.2d 169 (1975) (some citations omitted).

Further, this Court has stated that "[i]n order for jeopardy to attach, a defendant must risk a determination of guilt." *Odem v. State,* 175 Md.App. 684, 700, 931 A.2d 1135 (2007) (citing *Serfass v. United States,* 420 U.S. 377, 392, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)). And, "a defendant does not risk a determination of guilt when a trial court determines a preliminary matter without reaching the merits of the case." *Odem,* 175 Md.App. at 700, 931 A.2d 1135.

■ We are persuaded that appellant was not in initial jeopardy in this case when he appeared before the DUI Court on January 22, 2009. Notably, neither the prosecutor nor defense counsel were then present. No evidence in the traditional sense was received by the court. Further, appellant was never sworn or subject to cross-examination. The DUI court hearing did not have the traditional hallmarks of a non-jury trial.

Moreover, although appellant volunteered information about the new and separate charge, the DUI Court made clear that it was not deciding appellant's guilt concerning the new charge. Indeed, the court advised appellant that "[y]ou don't have to talk about the facts of the case, understand that. That's a pending case, . . . with legal implications, but what's been going on since I last saw you." Additionally, the court stated: "I don't know what'll happen in terms of the rest of this program, because a lot of that's up to the State and what they want to do with this new charge." The court added: "I don't know what's going to happen with the case. I don't know whether the State has a good case or bad case, I don't know how that's going to work out, okay? I have no idea." Finally, by stating "I'm going to impose a sanction for your using, for drinking. Getting this DWI," the DUI Court gave alternative reasons justifying appellant's incarceration. Therefore, we conclude appellant was not placed in initial jeopardy for the charges in this case when he appeared before the DUI Court on January 22, 2009.

*In the Interest of O.F.*, 773 N.W.2d 206 (N.D.2009), relied on by the State, is instructive. O.F. was adjudicated a delinquent child and placed into a drug court program. *Id.* at 207. The order placing him in drug court required that he comply with the rules and conditions set for him by the court. *Id.* While under the program, O.F. violated curfew. *Id.* After the police cited him for a curfew violation and returned him to his home, O.F. killed the family kitten. *Id.* As a result of this behavior, the drug court ultimately sanctioned O.F. by requiring that he complete an additional six hours of community service. *Id.*

Several months later, the State filed a petition against O.F. in juvenile court alleging that he committed the delinquent act of mistreating animals, and that he was an unruly child for violating curfew. *In the Interest of O.F.*, 773 N.W.2d at 207. O.F. filed a motion to dismiss, alleging that the sanction previously imposed by the drug court was for the same conduct and therefore the new charges violated double jeopardy. *Id.* The juvenile court denied the motion. *Id.* The State dismissed the curfew violation charge, and O.F. pleaded guilty to the mistreating animals charge. *Id.* As a result, O.F. was dismissed from the drug court program and his custody was transferred to the Division of Juvenile Services for one year. *Id.*

On appeal to the Supreme Court of North Dakota, O.F. contended that double jeopardy barred the juvenile court from punishing him for mistreating animals when he was sanctioned by the drug court to additional community service for the same conduct. *In the Interest of O.F.*, 773 N.W.2d at 207. The Court disagreed. *Id.* at 209. After considering the purposes of the drug court, and finding that they were similar to those a district court would have over an ordinary probationer, the Court stated: "[w]e perceive no substantive difference between a sanction imposed on a participant by a juvenile drug court for violation of the program's rules and revocation of probation by a district court for a defendant's violation of a condition of probation." *Id.* at 208.

We agree with the reasoning of the North Dakota court, and likewise find no substantive distinction between a sanction imposed for a violation of probation and a sanction imposed in a DUI/Drug Court. Because probation revocation proceedings are considered civil proceedings, a sanction imposed by a circuit court in such case does not implicate a defendant's double jeopardy rights. *Gibson v. State*, 328 Md. 687, 690, 616 A.2d 877 (1992). "As a general rule, there is no double jeopardy prohibition against revocation of probation and imposition of punishment." *Maus v. State*, 311 Md. 85, 105, 532 A.2d 1066 (1987).

In addition, observing that "jeopardy does not attach to probation-revocation proceedings," *id.* at 209, the North Dakota court concluded:

> It follows that a juvenile's double jeopardy rights are not violated when the facts used to impose a sanction by a juvenile drug court are later used to support an adjudication of delinquency.

> Here, the juvenile drug court and judicial referee did not adjudicate O.F. delinquent, but sanctioned him for violating program rules by requiring that he complete six additional hours of community service. Jeopardy did not attach to the sanction proceedings, and this Court has held that upon revocation of probation, an extension of the probation period does not subject a defendant to multiple punishment for the same offense. *See State v. Kensmoe*, 2001 ND 190, P 13, 636 N.W.2d 183. We conclude O.F.'s double jeopardy rights were not violated by the juvenile court's adjudication of delinquency premised on evidence of the same conduct which formed the basis for the sanction imposed by the juvenile drug court.

*In the Interest of O.F.*, 773 N.W.2d at 209.

A similar outcome applies in this case. As provided in a study of the Anne Arundel County DUI Treatment plan:

> A DUI Court is an accountability court dedicated to changing the behavior of the hardcore offenders arrested for Driving Under the Influence of Intoxicants. The goal of DUI Court is to protect public safety by using the highly successful Drug Court model that uses intensive supervision and long-term treatment to address the root cause of impaired driving: alcohol and other substance abuse. These court programs offer post-conviction intervention that involves coordination of multiple agencies and professional practitioners applying a variety of areas of expertise, intensive case management and supervision, and frequent judicial reviews. In the typical DUI court program, participants are closely supervised by a judge who is supported by a team of agency representatives that operate outside of their

traditional and sometimes adversarial roles. Benefits to society take the form of reductions in DUIs and other crime committed by program participants, resulting in reduced costs to taxpayers and increased public safety.

Mackin, J. R., et al., *Anne Arundel County DUI Court Program Outcome and Cost Evaluation,* Executive Summary p. 1 (NPC Research Dec. 2009).[8]

The program applies certain incentives and sanctions to implement those goals:

> [Anne Arundel County DUI Court] participants are rewarded for achieving and maintaining progress toward a substance free lifestyle. Incentives are provided by the judge as well as the case manager. Sanctions are also part of the program and are imposed by the judge for misconduct and failure to comply. *Sanctions may include community service, daily monitoring, and specific hours in lockup.*

*Id.* at Introduction and Background p. 3 (emphasis added).

Appellant signed an agreement pursuant to which he agreed that one consequence of failure to comply with the DUI/DWI Treatment Court requirements could be a "sanction" that included incarceration. When the DUI Court imposed such a sanction for appellant's non-compliance, the court was acting under the agreement.

In support of his double jeopardy argument, appellant primarily relies on *U.S. v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), *Ex Parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), and *Warne v. State,* 166 Md.App. 135, 887 A.2d 657 (2005). As we will explain, we find each to be distinguishable.

*Warne, supra,* involved a fatal automobile accident. Warne paid a fine for negligent driving following the automobile accident, and before the victim died. *Warne,* 166 Md.App. at

---

8. This report, prepared for the Office of Problem–Solving Courts for the Administrative Office of the Courts of the State of Maryland, is available online at: *http://www.npcresearch.com*

139, 887 A.2d 657. After the victim died, Warne was charged with automobile manslaughter and related offenses. *Id.* at 137, 887 A.2d 657. We concluded that, because the State could not have brought the greater offenses at the time Warne paid the fine for the lesser offense, Warne's prosecution for the death-related offenses was not barred by double jeopardy. *Id.* at 149, 887 A.2d 657. In our view, *Warne* has no bearing on this case.

In *Ex Parte Lange, supra,* the petitioner was convicted of appropriating for his own use mail bags belonging to the U.S. Post Office. *Ex Parte Lange,* 85 U.S. at 163. The possible punishments for this offense was imprisonment for not more than one year *or* a fine. *Id.* Lange was originally sentenced to one year imprisonment and a two hundred dollar fine. *Id.* He was incarcerated and paid the fine. *Id.* Subsequently, the prior judgment was vacated and Lange was sentenced to one year imprisonment. *Id.*

The Supreme Court held that the second sentence was a violation of double jeopardy, stating:

> We are of opinion that when the prisoner, as in this case, *by reason of a valid judgment,* had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone. That the principle we have discussed then interposed its shield, and forbid that he should be punished again for that offence. The record of the court's proceedings, at the moment the second sentence was rendered, showed that in that very case, and for that very offence, the prisoner had fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offence, and had suffered five days' imprisonment on account of the other. It thus showed the court that its power to punish for that offence was at an end. Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard, are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error

because the power to render any further judgment did not exist.

*Ex parte Lange*, 85 U.S. at 176 (emphasis added).

While *Lange* involves the imposition of multiple punishments for the same offense, in the instant matter, appellant was subject to multiple charging documents based on clearly separate incidents. *Lange* is likewise inapposite.

*Dixon, supra,* was a consolidation of cases involving different respondents, Alvin Dixon and Michael Foster. Dixon was arrested for second degree murder and released on bond. The release form indicated that Dixon was not to commit "any criminal offense" and warned that any violation would subject him to "revocation of release, an order of detention, and prosecution for contempt of court." *Dixon*, 509 U.S. at 691, 113 S.Ct. 2849.

While awaiting trial, Dixon was arrested and indicted for possession of cocaine with intent to distribute. *Dixon.* 509 U.S. at 691. At a show cause hearing to determine whether Dixon should be held in contempt of court, four police officers testified to the underlying facts of the drug offense. *Id.* The Court concluded that the Government had established "beyond a reasonable doubt that [Dixon] was in possession of drugs and that those drugs were possessed with the intent to distribute." *Id.* Dixon was found guilty of criminal contempt and sentenced to 180 days in jail. *Id.* at 691–92, 113 S.Ct. 2849. Dixon then moved to dismiss the narcotics indictment on double jeopardy grounds, and the trial court granted the motion. *Id.* at 692, 113 S.Ct. 2849.

Respondent Michael Foster's wife had obtained a civil protection order (CPO) against him based on alleged physical attacks. *Dixon*, 509 U.S. at 692, 113 S.Ct. 2849. The order required that Foster not "molest, assault, or in any manner threaten or physically abuse" his wife. *Id.* Thereafter, over the course of three months, Foster's wife filed three separate motions to have Foster held in contempt for violating the CPO. The United States government was aware of the action, but not involved in the case. *Id.* The court was aware that a

grand jury was investigating some of Foster's alleged criminal conduct at the time of the CPO trial. *Id.* The court found Foster guilty of four counts of criminal contempt and sentenced him to an aggregate 600 days imprisonment. *Id.*

The United States then obtained an indictment charging Foster with five separate counts. *Dixon,* 509 U.S. at 693, 113 S.Ct. 2849. Foster's wife was the complainant in all counts, and two of the counts were based on the same events for which Foster had been found guilty of contempt. The remaining counts were based on the same events for which Foster had been acquitted. *Id.* Foster filed a motion to dismiss on double jeopardy grounds and that motion was denied. *Id.*

Five Justices of the Supreme Court ultimately agreed that the contempt charges in Dixon's case, and some of the contempt charges in Foster's case, violated double jeopardy. This conclusion, reached in a number of concurring opinions, was shared by Justices Scalia, Kennedy, White, Stevens and Souter. However, the reasons for this conclusion varied as widely as the opinions themselves.

Justice Scalia, joined by Justice Kennedy, concluded that Dixon's drug offense was the same as the charge for criminal contempt and amounted to the "same offense" under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Dixon,* 509 U.S. at 697–700, 113 S.Ct. 2849.[9] Justice Scalia also concluded that one of the charges, but not the other four, against Foster was similarly barred under the *Blockburger* analysis. *Id.* at 700–03, 113 S.Ct. 2849. Justice Scalia's opinion also went on to overrule the "same conduct" analysis in such cases from *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), because that analysis was

---

**9.** *See Blockburger,* 284 U.S. at 304, 52 S.Ct. 180 ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not").

"wrong in principle," and "unstable in application." *Dixon,* 509 U.S. at 709, 113 S.Ct. 2849.[10]

Justice White, joined by Justice Stevens, as well as Justice Souter in part, concluded that "the Double Jeopardy Clause bars prosecution for an offense if the defendant already has been held in contempt for its commission." *Dixon,* 509 U.S. at 720, 113 S.Ct. 2849 (White, J., concurring in part and dissenting in part). Justice White would have held that the successive prosecutions of Dixon, and as to all counts concerning Foster, were barred by double jeopardy. *Dixon,* 509 U.S. at 731, 113 S.Ct. 2849 (White, J., concurring in part and dissenting in part). Notably, Justice White wrote:

> Dixon aptly illustrates these points. In that case, the motion requesting modification of the conditions of Dixon's release was filed by the Government, the same entity responsible for prosecution of the drug offense. Indeed, *in so doing it relied explicitly on the defendant's indictment on the cocaine charge.* 598 A.2d 724, 728 (D.C.1991). Logically, any problem of coordination or of advance notice of the impending prosecution for the substantive offense was at most minimal. Nor, aside from the legitimate desire to punish all offenders swiftly, does there appear to have been any real need to hold Dixon in contempt immediately, without waiting for the second trial. By way of comparison, at the time of his drug offense Dixon was awaiting trial for second-degree murder, a charge that had been brought some 11 months earlier.

*Dixon,* 509 U.S. at 729, 113 S.Ct. 2849 (White, J., concurring in part and dissenting in part) (emphasis added).

And further:

---

**10.** Appellant also asks us to apply the *Grady* test as a part of Maryland common law. Contrary to appellant's suggestion, the Court of Appeals has already declined to follow such an approach. *See In re Michael W.,* 367 Md. 181, 191, 786 A.2d 684 (2001) ("We decline to adopt the confused and discredited *Grady v. Corbin* holding as part of Maryland common law").

Besides, in the situation where a person has violated a condition of release, there generally exist a number of alternatives under which the defendant's right against being put twice in jeopardy for the same offense could be safeguarded, while ensuring that disregard of the court's authority not go unsanctioned. To the extent that they are exercised with due regard for the Constitution, *such options might include modification of release conditions or revocation of bail and detention. As respondents acknowledge, these solutions would raise no double jeopardy problem.*

*Dixon,* 509 U.S. at 729–730, 113 S.Ct. 2849 (White, J., concurring in part and dissenting in part) (footnote omitted, emphasis added).

Justice Souter, joined by Justice Stevens, concluded that, while a citation for criminal contempt and an indictment for violating a criminal statute may constitute the "same offense," both the prosecution of Dixon and all counts concerning Foster were barred as they amounted to successive prosecutions. *Dixon,* 509 U.S. at 743–44, 113 S.Ct. 2849 (Souter, J., concurring in part and dissenting in part). Justice Souter explained:

We have already quoted the observation that "the *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first."

*Dixon,* 509 U.S. at 754, 113 S.Ct. 2849 (quoting *Brown v. Ohio,* 432 U.S. 161, 166–67, n. 6, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)) (Souter, J., concurring in part and dissenting in part).

Justice Souter further observed:

Dixon was prosecuted for violating a court order to "refrain from committing any criminal offense." App. 8. The contempt prosecution *proved beyond a reasonable doubt* that he had possessed cocaine with intent to distribute it. His

prosecution, therefore, for possession with intent to distribute cocaine based on the same incident is barred. It is of course true that the elements of the two offenses can be treated as different. In the contempt conviction, the Government had to prove knowledge of the court order as well as Dixon's commission of some criminal offense. In the subsequent prosecution, the Government would have to prove possession of cocaine with intent to distribute. In any event, because the Government has already prosecuted Dixon for the possession of cocaine at issue here, Dixon cannot be tried for that incident a second time.

*Dixon,* 509 U.S. at 761, 113 S.Ct. 2849 (Souter, J., concurring in part and dissenting in part) (footnote omitted, emphasis added).

The same result applied to all of the charges against Foster. Justice Souter explained that: "[t]he conduct at issue constituted the conduct in the contempts first charged as well as in the crimes subsequently prosecuted, and the Government's prosecution of Foster twice for the conduct common to both would violate the Double Jeopardy Clause." *Dixon,* 509 U.S. at 763, 113 S.Ct. 2849 (Souter, J., concurring in part and dissenting in part).

We believe *Dixon* to be distinguishable in several aspects. In both Dixon's contempt hearing, as well as the bench trial concerning Foster's violation of the CPO, issues of fact were litigated and determined beyond a reasonable doubt. Such did not occur in appellant's appearance before the DUI court—neither the State nor appellant's counsel appeared at that hearing and, as we have concluded, that hearing bore none of the indicia of an adjudicatory proceeding. Moreover, as Justice White acknowledges in his concurring opinion, joined by Justices Stevens and Souter, a court may impose detention as a sanction for violating a condition of pretrial release without implicating double jeopardy. *See Dixon,* 509 U.S. at 729–730, 113 S.Ct. 2849 (White, J., concurring in part and dissenting in part). Further, even under *Blockburger,* the threshold requirement is that the offenses arise out of the same act or transaction. As we have noted, the charges at

issue in the DUI Court and in this case grew from separate incidents, occurring on May 26, 2007, and January 18, 2009, respectively.

Accordingly, we hold that appellant was not placed in jeopardy in this case when he told the DUI Court that he had been drinking and driving on January 18, 2009, and was sanctioned as a result. The sanction imposed by the DUI Court was for his failure to comply with the terms of his 2007 pre-trial release under the DUI Treatment agreement. He was not punished by the DUI court in *this case* and therefore was not subject to double jeopardy. The motions court properly denied appellant's motion to dismiss.

## 2. *Waiver*

Appellant also asserts that "the absence of an affirmative waiver of double jeopardy rights on the record requires reversal." Essentially, appellant suggests that he did not waive his right to move to dismiss on double jeopardy grounds when he agreed to be subject to the DUI Court.

The State does not respond to this argument. Therefore, there is no contention on appeal that appellant's double jeopardy argument was unpreserved. We have addressed, and rejected, the merits of appellant's double jeopardy argument. Therefore, we need not consider whether appellant waived his right to be free from double jeopardy by agreeing to be subject to the DUI Court.

Moreover, to consider this issue we would be required to examine the record of the hearing held on February 5, 2008, in District Court Case Number EG44342, when appellant, appellant's counsel, the prosecutor, and the court first entered into the DUI Treatment agreement. No such record was provided.

As the Court of Appeals has stated, "[i]t is incumbent upon the appellant claiming error to produce a sufficient factual record for the appellate court to determine whether error was committed, and he has not done that in this case." *Mora v. State,* 355 Md. 639, 650, 735 A.2d 1122 (1999); *see also*

Md. Rule 8–501(c) (the contents of record "shall contain all parts of the record that are reasonably necessary for the determination of the questions presented by the appeal and any cross-appeal"); *Whack v. State,* 94 Md.App. 107, 126–27, 615 A.2d 1226 (holding that appellant's failure to provide tapes and transcripts is dispositive of contention relying on those materials), *cert. denied,* 330 Md. 155, 622 A.2d 1196 (1993); *Jacobs v. State,* 45 Md.App. 634, 641–42, 415 A.2d 590 (failure to include transcript of tape played for jury barred appellate review of question whether tapes was hearsay), *cert. denied,* 288 Md. 737 (1980); *White v. State,* 8 Md.App. 51, 53–54, 258 A.2d 50 (1969) (concluding it was appellant's responsibility to provide transcript of a hearing to support his claim), *cert. denied,* 257 Md. 737 (1970).

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS ASSESSED TO APPELLANT.**