On Application for Rehearing

MAIN, Justice.
The opinion of March 2, 2012, is withdrawn, and the following is substituted therefor.
*982 Sacred Heart Health System, Inc. (“Sacred Heart”), the defendant in a declaratory-judgment action filed by Infirmary Health System, Inc. (“IHS”), and South Baldwin Regional Medical Center (“South Baldwin”),[1] appealed to this Court from one aspect of a final judgment entered by the Montgomery Circuit Court in favor of IHS and South Baldwin. IHS and South Baldwin cross-appealed from another aspect of the trial court’s judgment in favor of Sacred Heart. This Court transferred the appeal and cross-appeal to the Court of Civil Appeals; that court reversed the judgment of the trial court. Sacred Heart Health Sys., Inc. v. Infirmary Health Sys., 155 So.3d 969 (Ala.Civ.App.2010). Sacred Heart then filed a petition for certiorari review with this Court, which we granted. We now reverse and remand.
I. Facts and Procedural History
Sacred Heart is an out-of-state, charitable, nonprofit corporation that provides health-care services in the panhandle of Florida and in southern Baldwin County. Sacred Heart also owns Sacred Heart Medical Group (“SHMG”), consisting of 143 multi-specialty physicians who practice in the area served by Sacred Heart. SHMG is not a separate legal entity. All SHMG physicians have uniform employment contracts with SHMG; billing for all patients is consolidated and handled by SHMG employees; third-party providers consider SHMG a medical group; and its physicians share the same billing number.
Six SHMG physicians practice in southern Baldwin County. When their practices increased and it was not feasible to expand their existing offices, Sacred Heart executed a preconstruction contract with Colonial Pinnacle MOB, LLC, the wholly owned subsidiary of Johnson Development, LLC, a developer and builder of medical-office buildings throughout Alabama (both entities are hereinafter referred to jointly as “Johnson Development”). The contract dealt with Sacred Heart’s proposed lease of a portion of a building to be constructed primarily for medical purposes (hereinafter referred to as “the medical-building project”). Sacred Heart has no ownership interest in the medical-building project or the land on which the medical-building project is located. Johnson Development’s initial plans for the medical-building project called for a 44,000-square-foot building that would include an outpatient surgery center, medical-office suites for SHMG physicians, time-share space for use by non-SHMG physicians, a diagnostic center, a laboratory, and a rehabilitation center, all of which would be leased to various entities including Sacred Heart. Sacred Heart intends for the SHMG physicians practicing in the medical-building project to provide a family practice, walk-in care, and laboratory and diagnostic facilities. Sacred Heart also plans to recruit an oncologist to offer services to include mammography and CT scans who would have an office and diagnostic facilities in the medical-building project.
Three SHMG physicians already use the leased space in the medical-building project as their primary office; there is space for eight physicians. The area intended for the surgery center was to have been leased to and operated by Pleasure Island Ambulatory Surgery Center, LLC, a group of non-SHMG physicians. Pleasure Island applied for a certificate of need (“CON”) to operate the surgery center, but the State Health Planning and Development Agency (“SHPDA”) denied its application. The Court of Civil Appeals affirmed, without opinion, the trial court’s judgment upholding SHPDA’s decision. Pleasure Island Ambulatory Surgery Ctr., *983 LLC v. State Health Planning & Dev. Agency (No. 2080953, April 16, 2010), 82 So.3d 17 (Ala.Civ.App.2010) (table). Therefore, the medical-building project will not contain a surgery center, nor will it contain a rehabilitation center. The initial plan to lease space for a rehabilitation center was abandoned before Johnson Development completed the medical-building project.
The contested issue between the parties is whether the portion of the medical-building project Sacred Heart has leased for its Baldwin County physicians to use (“the SHMG leased space”) is subject to Sacred Heart’s first obtaining a CON from SHPDA.[2] Section 22-21-260 et seq., Ala. Code 1975, sets out the law concerning the regulation of health-care facilities.
Section 22-21-265, Ala.Code 1975, requires that any person furnishing a “new institutional health service” must first obtain a CON from SHPDA:
“(a) On or after July 30, 1979, no person to which this article applies shall acquire, construct, or operate a new institutional health service, as defined in this article, or furnish or offer, or purport to furnish a new institutional health service, as defined in this article, or make an arrangement or commitment for financing the offering of a new institutional health service, unless the person shall first obtain from the SHPDA a certificate of need therefor.... ”
Section 22-21-263, Ala.Code 1975, prohibits institutional health services that are inconsistent with the “State Health Plan”:[3]
“(a) All new institutional health services which are subject to this article and which are proposed to be offered or developed within the state shall be subject to review under this article. No institutional health services which are subject -to this article shall be permitted which are inconsistent with the State Health Plan. For the purposes of this article, new institutional health services shall include any of the following:
“(1) The construction, development, acquisition through lease or purchase, or other establishment of a new health care facility or health maintenance organization.”
The term “institutional health services” is defined at § 22-21-260(9), Ala. Code 1975, as “[hjealth services provided in or through health care facilities or health maintenance organizations, including the entities in or through which such services are provided.”
The emphasized language in § 22-21-260(8), Ala.Code 1975, defining “health services,” provides an exemption for a physician’s practice:
“(8) Health services. Clinically related (i.e., diagnostic, curative, or rehabilitative) services, including alcohol, drug abuse, and mental health services customarily furnished on either an in-patient or out-patient basis by health care facilities, but not including the lawful practice of any profession or vocation conducted independently of a health *984 care facility and in accordance with applicable licensing laws of this state.”
(Emphasis added.)
Section 22-21-260(6), Ala.Code 1975, defines a “health care facility” as follows:
“(6) Health care facility. General and specialized hospitals, including tuberculosis, psychiatric, long-term care, and other types of hospitals, and related facilities such as, laboratories, out-patient clinics, and central service facilities operated in connection with hospitals; skilled nursing facilities; intermediate care facilities; skilled or intermediate care units operated in veterans’ nursing homes and veterans’ homes ...; rehabilitation centers; public health centers; facilities for surgical treatment of patients not requiring hospitalization; kidney disease treatment centers ...; community mental health centers and related facilities; alcohol and drug abuse facilities; facilities for the developmentally disabled; hospice service providers; and home health agencies and health maintenance organizations. The term health care facility shall not include the offices of private physicians or dentists, whether for individual or group practices and regardless of ownership. ...”
(Emphasis added.) The language emphasized above is referred to as the physician’s office exemption (“the POE”).
After Sacred Heart contracted to lease a portion of the medical-building project, South Baldwin filed a petition with SHPDA in which it requested that SHPDA declare that Sacred Heart’s plans to develop the medical-building project required that Sacred Heart obtain a CON from SHPDA. IHS intervened in support of South Baldwin’s petition. The administrative law judge assigned to hear the petition determined that SHPDA did not have jurisdiction and remanded the petition to the Certificate of Need Review Board (“the CONRB”). When the petition was not ruled on within 45 days, the petition was deemed denied pursuant to § 41-22-11, Ala.Code 1975. South Baldwin and IHS then filed a petition for judicial review in the Montgomery Circuit Court. The trial court denied summary-judgment motions filed by the parties and considered the case on a joint submission of the evidence. The trial court held that the SHMG leased space qualified for the POE available in § 22-21-260(6), Ala.Code 1975, and, therefore, that the SHMG leased space was not a health-care facility requiring CON review. South Baldwin and IHS filed a postjudgment motion. The trial court amended its judgment to hold that the SHMG leased space qualified for the POE only as to the three SHMG physicians who had relocated to the medical-building project from their south Baldwin County offices. The trial court also held that adding additional physicians or providing additional services in the medical-building project would require Sacred Heart to obtain a CON.
On appeal, the Court of Civil Appeals reversed the trial court’s judgment and remanded the case for the entry of a judgment declaring that “the MOB [medical-office-building] project, as developed as a whole,” does not qualify for the POE and requires CON review.[4] 155 So.3d at 979. The Court of Civil Appeals also directed the trial court to enjoin Sacred Heart from offering health-care services in the medical-building project until it secures a CON.
Sacred Heart filed a petition for a writ of certiorari to this Court and asserted as a ground for review that this case presents *985 the following material question of first impression: Whether the SHMG leased space and the health-care services proposed by Sacred Heart to be offered therein qualify for the POE so that Sacred Heart is not required to secure a CON.
II. Standard of Review
“Our standard of review of this case is governed by statute. Section 12-2-7(1), Ala.Code 1975, states:
“ ‘[I]n deciding appeals, no weight shall be given the decision of the trial judge upon the facts where the evidence is not taken orally before the judge, but in such cases the Supreme Court shall weigh the evidence and give judgment as it deems just.’
“In a case in which a trial court has not heard live testimony, this Court has held that ‘a reviewing court will not apply the presumption of correctness to a trial court’s findings of fact and that the reviewing court will review the evidence de novo.’ Eubanks v. Hale, 752 So.2d 1113, 1122 (Ala.1999). Our statutory obligation in a case such as this is to ‘weigh the evidence and give judgment as [we] deem[ ] just.’ ”
Bentley Sys., Inc. v. Intergraph Corp., 922 So.2d 61, 70-71 (Ala.2005). Moreover, we also review de novo a question of law involving statutory construction. Whitehurst v. Baker, 959 So.2d 69, 70 (Ala.2006).
III. Analysis
Section 22-21-265, Ala.Code 1975, requires that the provider of any new institutional health service must first obtain a CON from SHPDA. By definition, to be considered a new “institutional health service,” the provider of the service must offer “health services” in or through a “health care facility.” As defined in the applicable statutes, the terms “health services” and “health care facility” both include exemptions for a physician’s practice. “Health services” do not include “the lawful practice of any profession or vocation conducted independently of a health care facility and in accordance with applicable licensing laws.” § 22-21-260(8). A “health care facility” does not include “the offices of private physicians or dentists, whether for individual or group practices and regardless of ownership.” § 22-21-260(6).
The exemption for a physician’s practice contained in the definition of health services is broader than the POE contained in the definition of a health-care facility. It exempts a physician’s practice of his or her profession so long as it is conducted independently of a health-care facility. If our inquiry were limited to whether the SHMG physicians whose offices are located in the medical-building project are engaged in the lawful practice of their profession, the exemption in the definition of “health services” in § 22-21-260(8) would excuse Sacred Heart from obtaining a CON for the SHMG leased space. However, the exemption in § 22-21-260(8) also requires that the practice of the profession at issue be conducted “independently of a health care facility,” so we must also determine whether the POE in the definition of “health care facility” in § 22-21-260(6) for the “offices of private physicians” either individually or in a group practice, “regardless of ownership,” applies to the SHMG leased space.
Our inquiry is governed by settled principles of statutory construction.
“When interpreting a statute, a court must first give effect to the intent of the legislature. BP Exploration & Oil, Inc. v. Hopkins, 678 So.2d 1052 (Ala.1996).
“ ‘The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). In this ascertainment, we must look to *986 the entire Act instead of isolated phrases or clauses; Opinion of the Justices, 264 Ala. 176, 85 So.2d 391 (1956).’
“Darks Dairy, Inc. v. Alabama Dairy Comm’n, 367 So.2d 1378, 1380 (Ala.1979) (emphasis added). To discern the legislative intent, the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, there is no room for judicial construction. Ex parte Waddail, 827 So.2d 789, 794 (Ala.2001). If a literal construction would produce an absurd and unjust result that is clearly inconsistent with the purpose and policy of the statute, such a construction is to be avoided. Ex parte Meeks, 682 So.2d 423 (Ala.1996).”
City of Bessemer v. McClain, 957 So.2d 1061, 1074-75 (Ala.2006). “When a court construes a statute, ‘[w]ords used in [the] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to intex-pret that language to mean exactly what it says.’ ” Ex parte Berryhill, 801 So.2d 7, 10 (Ala.2001) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). As we have repeatedly stated, the function of this Court is “ ‘to say what the law is, not to say what it should be.’ ” Ex parte Achenbach, 783 So.2d 4, 7 (Ala.2000) (quoting DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala.1998)).
“ ‘ “ ‘It is settled that courts should give great weight to any reasonable constraction of a regulatory statute adopted by the agency charged with the-enforcement of that statute.’ ” ’ ” QCC, Inc. v. Hall, 757 So.2d 1115, 1119 (Ala.2000) (quoting NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995), quoting in turn Clarke v. Securities Indus. Ass’n, 479 U.S. 388, 403 (1987), quoting in turn Investment Co. Institute v. Camp, 401 U.S. 617, 626-27 (1971)). The CONRB has formulated a four-pai't test that it uses to determine whether the POE is applicable in a given situation. The test was first stated in CONRB Administrative Ruling Re: Heart-Lung Associates of America, P.C., DR-100 (August 29, 2001), at p. 3, ¶ 11, n. 3, and restated in CONRB Administrative Ruling( Re: East Alabama Health Care Authority d/b/a East Alabama Medical Center v. Institute for Advanced Cardiovascular Care & Community Medical Development, LLC, DR-110 (May 3, 2007), at p. 5 (“the Heart-Lung test”). Under the Heart-Lung test, the POE is applicable when it is shown:
“1. That the pi'oposed seiwices ai'e to be provided, and related equipment used, exclusively by the physicians identified as owners or employees of the physicians’ pi-actice for the eai'e of their patients.
“2. That the proposed seiwices are to be provided, and x’elated equipment used, at the primai-y office of such physicians.
“3. That all patient billings related to such services are thi'ough, or expressly on behalf of, the physicians’ practice, and not on behalf of a third party.
“4. That the equipment shall not be used for inpatient care, nor by, through or on behalf of a health care facility.”
Sacred Heart argues that the standard applied by the Court of Civil Appeals to determine whether the SHMG leased space qualifies for the POE is arbitrary, subjective, and unworkable and that that coui’t eri'ed when it held that the second factor - of the Heart-Lung test had not been satisfied. Sacred Heart further ai'-gues that the injunction dii*ected to be issued by the Coui't of Civil Appeals was *987 based primarily on that court’s application of a subjective and arbitrary test that this Court should reject. The main opinion of the Court of Civil Appeals stated that the POE did not apply because “the scope of the MOB [medical-offiee-building] project, as originally designed and developed, reaches in our minds the point referred to by the CONRB in DR-116, ‘where an outpatient facility, even one developed and owned by physicians, goes beyond a common sense definition of a “physician’s office,” and is subject to review.’ ” 155 So.3d at 978. Sacred Heart contends that this standard does not provide the clarity or specificity necessary for predictable health-care planning and maintains that it should be replaced with the Heart-Lung test. Sacred Heart also argues that all four factors of the Heart-Lung test are met and that therefore the POE is applicable to the SHMG leased space.
IHS and South Baldwin argue not only that the statutory requirement for CON review applies to the operation of a new health-care facility, but also that the statutory scheme prohibits developing, acquiring, constructing, or obtaining financing for institutional health services without first obtaining a CON. See § 22-21-263(a), Ala.Code 1975. IHS argues in its brief that, according to § 22-21-263(a), “Sacred Heart was obligated to obtain a CON prior to, and in order to, engage in the construction, development or lease of the new health care facility.” IHS’s brief, at 27. IHS maintains that Sacred Heart “executed leases for facilities comprising a ‘health care facility for which CON review is required.” IHS’s brief, at 28. South Baldwin argues in its brief that “Sacred Heart, with its three hospitals and various outpatient clinics all operating as a single legal entity, unquestionably qualifies as a ‘health care facility’ under [the Heart-Lung test].” South Baldwin’s brief, at 28. Therefore, South Baldwin argues, Sacred Heart cannot “exempt itself from the restrictions of the CON statute simply by employing physicians.” Id. SHPDA adopted the Heart-Lung test, IHS and South Baldwin say, to analyze whether a project is designed as the offices of private physicians or is a health-care facility subject to CON review. IHS and South Baldwin contend that the SHMG leased space triggered the CON requirement not only because it was designed as a new health-care facility, but also because Sacred Heart proposed new services at the facility that independently require CON review. IHS and South Baldwin argue that the SHMG leased space does not meet all the criteria to qualify for the POE and that, therefore, Sacred Heart must obtain a CON before it can use the SHMG leased space.
This Court has reviewed the Heartr-Lung test and given it great weight, has considered the problems with the application of the test that have arisen in this case, and has given the words in the POE “their natural, plain, ordinary, and commonly understood meaning.” IMED Corp., 602 So.2d at 346. We conclude that the Heart-Lung test is substantially sound but that it should be modified to be consistent with the purpose and policy of the POE and to reflect the legislative intent expressed in § 22-21-260(6). We hereby adopt a modified four-part test[5] to be used *988 to determine whether a proposed medical facility or project qualifies for the POE (hereinafter referred to as “the POE application test”):
(1) The proposed services are to be provided, and related equipment used, exclusively by the physicians identified as owners or employees of the physicians’ practice for the care of their patients.
(2) The proposed services are to be provided, and related equipment used, at any office of such physicians.
(3) All patient billings related to such services are through, or expressly on behalf of, the physicians’ practice.
(4) The equipment shall not be used for inpatient care, nor by, through, or on behalf of a health-care facility.
The POE application test is promulgated to provide clarification as to the exemption from the CON review process for the offices of licensed physicians, dentists, or group practices and should not be interpreted as circumventing the statutory language in §§ 22-21-260(6), 22-21-260(8), 22-21-263, and 22-21-265, Ala.Code 1975, or otherwise applicable statutes or administrative regulations pursuant to the “State Health Plan.”[6] The POE application test will provide an objective standard that can be used to determine whether the POE applies to any medical practice, whether the practice is solo or group, large or small, specialized or general. Such an objective test will not only provide direction to SHPDA, the CONRB, and our courts, but will also provide the certainty needed by developers of medical office buildings in this State and its physicians at times when, for example, they consider relocating a practice, adding a new physician or specialty to an existing practice, purchasing a piece of new equipment, or offering a new service.
As to the SHMG leased space, the trial court did not have before it the POE application test we adopt today; therefore, we remand this case to the Court of Civil Appeals for it to remand the case to the trial court for consideration in light of the POE application test, including any further proceedings the trial court deems necessary. Because we today adopt the POE application test and remand the case, we pretermit consideration of the other arguments made by the parties.
IV. Conclusion
We reverse the judgment of the Court of Civil Appeals and remand this case for that court to remand the case to the trial court for any further proceedings it deems necessary and for the trial court to apply the POE application test to the SHMG leased space in the medical-building project in a manner consistent with this opinion.
APPLICATION GRANTED; OPINION OF MARCH 2, 2012, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
MALONE, C.J., and WOODALL, STUART, BOLIN, PARKER,* and MURDOCK, JJ., concur.
SHAW, J., concurs in the result.
WISE, J., recuses herself.

. It is unclear from the record what type of entity South Baldwin is.

. In examining the medical-building project as a whole, this Court does not refer to the entire building constructed by Johnson Development, which contains space for medical and non-medical uses, but to the portion of the building leased by the specific physicians' practice seeking to apply the physician’s office exemption to the CON requirement. In this case, we review the SHMG leased space because that is the only space to be used by the SHMG practice.

. The "State Health Plan” is defined at § 22-21-260(13), Ala.Code 1975, as "[a] comprehensive plan which is prepared triennially and reviewed at least annually and revised as necessary....”

. The Court of Civil Appeals’ opinion was authored by Judge Thomas. Presiding Judge Thompson and Judge Bryan concurred in the result; Judge Pittman and Judge Moore dissented.

. We have changed the phrase "the primary office” to “any office” in the second part of the test and have struck the phrase "and not on behalf of a third party” in the third part because of a potential conflict with the phrase "regardless of ownership” in the statutory language of the POE. Ex parte McLeod, 718 So.2d 682, 690 (Ala.1997) ("An administrative agency's interpretation of a statute will not be given deference if it is contrary to the legislative intent.”). See also Ex parte Crestwood Hosp. & Nursing Home, Inc., 670 So.2d 45, 47 (Ala.1995) ("It is settled law that the provisions of a statute will prevail in any case in which there is a conflict between the statute and a state agency regulation.”)

. See supra note 3.