OPINION OF THE COURT
Mario J. Rossetti, J.
Defendant had been arrested for murder in the second degree and held for the action of the Grand Jury. Pursuant to their investigation, the People subpoenaed defendant’s mother, *843 Kathy Hilligas, to testify before the Grand Jury, but, upon her appearance, she refused to answer questions concerning conversations she had with her son following the alleged homicide, claiming that such communications were protected under the concept of a “child-parent” privilege. The People then moved this court to compel Mrs. Hilligas to testify concerning conversations she had with the defendant relating to the alleged homicide. The defendant is 28 years old, financially self-supporting, owns his own home, and has lived separate and apart from his parents for at least seven years. After receiving briefs and hearing oral argument, this court ordered Mrs. Hilligas to testify, holding that the parent-child privilege is not applicable to the circumstances of this case. This memorandum serves to memorialize that oral decision.
New York has not recognized, by statute, a privilege for confidential communications between a child and parent (Matter of Mark G., 65 AD2d 917). New York courts have, however, recognized a common-law child-parent privilege under limited circumstances. In Matter of A & M (61 AD2d 426), the Erie County District Attorney subpoenaed the parents of a 16-year-old boy to testify before the Grand Jury concerning alleged admissions the boy may have made to his parents. The Appellate Division, Fourth Department, in applying a child-parent privilege to those statements, reasoned that: “It would be difficult to think of a situation which more strikingly embodies the intimate and confidential relationship which exists among family members than that in which a troubled young person, perhaps beset with remorse and guilt, turns for counsel and guidance to his mother and father. There is nothing more natural, more consistent with our concept of the parental role, than that a child may rely on his parents for help and advice. Shall it be said to those parents, ‘Listen to your son at the risk of being compelled to testify about his confidences?’ ” (Matter of A & M, supra, at 429.)
The explanation articulated by the A & M Court was that the fostering of a confidential parent-child relationship is necessary to the child’s development of a positive system of values. “The role of the family, particularly that of the mother and father, in establishing a child’s emotional stability, character and self-image is universally recognized. The erosion of this influence would have a profound effect on the individual child and on society as a whole. Child psychologists and behavioral scientists generally agree that it is essential to the parent-child relationship that the lines of communication remain open *844 and that the child be encouraged to ‘talk out’ his problems. It is therefore critical to a child’s emotional development that he know that he may explore his problems in an atmosphere of trust and understanding without fear that his confidences will later be revealed to others” (see, Matter of A & M, supra, at 432).
The A & M Court recognized that the State has a legitimate interest in the process of fact-finding necessary to discover, try, and punish criminal behavior (at 433, citing Branzburg v Hayes, 408 US 665, 688), but stated “Nevertheless, if it is determined that the information sought here was divulged by the boy in the context of the familial setting for the purpose of obtaining support, advice or guidance, we believe that the interest of society in protecting and nurturing the parent-child relationship is of such overwhelming significance that the State’s interest in fact-finding must give way” (Matter of A & M, supra, at 433-434). Ultimately, the Court held that “the communications made by a minor child to his parents within the context of the family relationship may, under some circumstances, lie within the ‘private realm of family life which the state cannot enter’ ” (Matter of A & M, supra, at 435 [emphasis supplied]).
The privilege created by A & M (supra) was expanded in People v Fitzgerald (101 Misc 2d 712), which involved statements made by a 23-year-old emancipated defendant to his father. Fitzgerald held that there exists a “parent-child” privilege which would prevent forced disclosure by the State of confidential communications between a parent and a child of any age when the parties to such communication mutually assert such a privilege (People v Fitzgerald, supra, at 713). Finding that the privilege is grounded in law, logic, morality, and ethics, the court reasoned that “While it is true that ‘fostering of a confidential parent-child relationship is necessary to the child’s development of a positive system of values,’ (Matter of A. & M., supra, at p 433) it does not follow that this fundamental relationship can arbitrarily be said by the State to cease at the stroke of midnight on the last day of the child’s 17th year” (101 Misc 2d, at 718), and concluded that the relationship must be protected throughout the life of the parties. In reasoning that it is not the age of the parties, but “the nature of the relationship and the nature of the communication which govern,” the court held that “such a parent-child privilege as arising out of a constitutional right to privacy may not and should not be limited by the age of either party asserting such claim” (101 Misc 2d, at 720).
*845 Other New York courts have followed A & M (supra), generally limiting the circumstances which give rise to a parent-child privilege to when a minor child is under arrest for serious crime and seeks guidance and advice of a parent while in the unfriendly environs of a police precinct (see, People v Edwards, 135 AD2d 556; People v Harrell, 87 AD2d 21, 26, affd 59 NY2d 620; People v Tesh, 124 AD2d 843, lv denied 69 NY2d 750; People v Gloskey, 105 AD2d 871; Matter of Mark G., 65 AD2d 917, supra). Fitzgerald (supra) is the only New York case to extend the A & M privilege to an adult child.
The Court of Appeals had the opportunity to address this issue in People v Johnson (84 NY2d 956), which held that “a parent-child testimonial privilege * * * would not even arguably apply [where] the defendant was 28 years old at the time of the conversation with his mother; another family member was present; the mother testified before the Grand Jury hearing evidence against defendant; and the conversation concerned a crime committed against a member of the household” (People v Johnson, at 957). Although the Court of Appeals didn’t hold that a parent-child privilege would never exist for an adult child, that it considered the child’s age a factor in determining that no privilege existed is significant in our analysis and surely not an endorsement of the Fitzgerald holding.
It is also significant that few sister State or Federal courts have recognized a parent-child privilege. A thorough review of Federal and State case law on the subject is provided in In re Grand Jury (103 F3d 1140 [3d Cir 1997], cert denied sub nom. Roe v United States, — US —, 138 L Ed 2d 177, 117 S Ct 2412) which concluded that there is no recognizable parent-child privilege under Federal law. In that case, the Third Circuit Court of Appeals found that few Federal or State courts have recognized a parent-child privilege, that eight Federal Courts of Appeals have explicitly rejected the privilege, and none of the remaining Courts of Appeals have recognized the privilege (In re Grand Jury, 103 F3d 1140, 1147). The court also found that the overwhelming majority of State courts, like their Federal counterparts, have also declined to recognize a common-law parent-child privilege and that New York is the only State which has a judicially recognized parent-child privilege (see, In re Grand Jury, supra, at 1147, and cases cited therein).
The defendant now contends that this court should follow Fitzgerald (supra) and expand the parent-child privilege as recognized in A&M (supra) to include an adult child not under arrest and not in police custody.
*846 The reasons for applying the parent-child privilege as provided in A & M (supra) were all based on the need for a young, minor child to seek guidance and advice from his or her parents. Fitzgerald (supra), reasoning that it was the nature of the relationship and the nature of the communication, and not the age of the child, which must govern, held that the need to protect that relationship into a child’s adulthood continued to outweigh the State’s interest in investigating serious crimes. This court finds, contrary to Fitzgerald, however, that once a child reaches adulthood, the nature of the relationship between child and parent undergoes such a significant change that it no longer outweighs the State’s interest in investigating serious crimes.
Upon becoming an adult, the child is free to make moral and ethical decisions without the input and without having to answer to his or her parents. The child often becomes self-supporting and lives separate and apart from his or her parents, who are no longer responsible for the moral and financial support of the child. The child can leave the nest and need never come back. Parents can no longer discipline their child for misbehavior. That function, if the misbehavior is criminal, shifts from the parent to the State. The adult child is more likely to seek advice and guidance from persons other than their parents. These people may be a spouse, close friends, business associates, attorneys, clergy, physicians, psychologist, social workers, siblings, and others with whom an adult child often develops a greater willingness to openly confide in other than with his or her parents. Significantly, several of these relationships have been deemed by the Legislature to be confidential and protected from disclosure (see, CPLR 4503-4508). The role of the parent as advisor and counselor, although not eradicated, is diminished. The panoply of reasons so cogently outlined in A & M (supra) in support of the privilege often don’t survive into the child’s adulthood, and even if some do, they no longer outweigh the State’s significant interest in investigating violent crime (see, In re Grand Jury, 103 F3d 1140, 1152-1153, supra).
For the foregoing reasons, defendant’s motion to apply the parent-child privilege to the facts of this case was denied.