2009 ND 177

**In the Interest of O.F., a child.**

**Jeffrey Ubben, Petitioner and Appellee**

v.

**O.F., child, Respondent and Appellant**

and

**D.F., mother, and S.F., father, Respondents.**

**No. 20090137.**

Supreme Court of North Dakota.

Oct. 13, 2009.

Jeffrey Ryan Ubben, Assistant State's Attorney, Bismarck, ND, for petitioner and appellee.

Bradley D. Peterson, Bismarck, ND, for respondent and appellant.

KAPSNER, Justice.

[¶ 1] O.F., a 17–year–old juvenile, appeals from a juvenile court order adjudicating him a delinquent child for committing the delinquent act of mistreating an animal in violation of state law. We affirm, concluding O.F.'s double jeopardy rights were not violated in this case and the juvenile court did not err in refusing to recognize a parent-child testimonial privilege.

I

[¶ 2] On June 24, 2008, O.F., who was born in December 1991, was adjudicated by the juvenile court to be unruly and delinquent as defined by N.D.C.C. § 27–20–02. The juvenile court's order placed O.F. into the South Central Juvenile Drug Court Program for a period not to exceed two years from June 15, 2008. The order required that O.F. comply with and follow the rules and conditions set for him by the juvenile drug court.

[¶ 3] On July 17, 2008, O.F. violated curfew when he left his home at 2 a.m. Bismarck police cited O.F. for a curfew violation and returned him to his home. After returning home, O.F. killed his family's kitten. As a result of O.F.'s behavior, the juvenile drug court team recommended to the judicial referee that O.F. be sanctioned. The judicial referee sanctioned O.F. by requiring that he complete an additional six hours of community service.

[¶ 4] On September 16, 2008, an assistant Burleigh County state's attorney ("State") filed a petition in juvenile court alleging that O.F. had committed the delinquent act of mistreating animals in violation of N.D.C.C. § 36–21.1–02(1) and that he was an unruly child for violating curfew. O.F. filed a motion to dismiss the charges, claiming prosecution for the mistreating animal charge and the curfew violation charge, following the sanction imposed by the juvenile drug court for the same conduct, violated his double jeopardy rights. O.F. also filed a motion to prohibit his mother from testifying against him, claiming her testimony would violate the "child-parent privilege." O.F. did not object to the judicial referee and the assistant state's attorney participating in both his juvenile drug court team and the subsequent juvenile court proceedings concerning the delinquency charge. The judicial referee, and upon request for review, the juvenile court, denied both motions. The State eventually moved to dismiss the curfew violation charge, and O.F. conditionally pled guilty to the mistreating animal charge, reserving his right to appeal the denial of his motions under N.D.R.Crim.P. 11(a)(2). The judicial referee found O.F. had committed the delinquent act of mistreating an animal in violation of state law, dismissed O.F. from the juvenile drug court program, and transferred custody of O.F. from his parents to the Division of Juvenile Services for one year.

II

[¶ 5] O.F. argues double jeopardy barred the juvenile court from punishing him for committing the delinquent act of mistreating an animal after he had already been sanctioned with additional community service by the juvenile drug court based on the same underlying conduct.

[¶ 6] "Double jeopardy principles apply to juvenile court proceedings involving adjudication of delinquent acts." *Interest of B.F.*, 2009 ND 53, ¶ 6, 764 N.W.2d 170. The prohibition against double jeopardy is found in the federal and state constitutions, as well as in state law. *See* U.S. Const. amend. V; N.D. Const.

art. I, § 12; N.D.C.C. § 29–01–07; *State v. Linghor*, 2004 ND 224, ¶ 19, 690 N.W.2d 201. "The constitutional guarantee against double jeopardy encompasses three separate protections: protection against a second prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense." *State v. Moos*, 2008 ND 228, ¶ 13, 758 N.W.2d 674. Double jeopardy is a defense which may be waived, *State v. Voigt*, 2007 ND 100, ¶ 8, 734 N.W.2d 787, and a defendant claiming a double jeopardy violation bears the burden of proving each element of former jeopardy. *See, e.g., United States v. Laguna–Estela*, 394 F.3d 54, 56 (1st Cir.2005); *State v. Cantrell*, 223 Or.App. 9, 195 P.3d 451, 453 (2008); 21 Am.Jur.2d *Criminal Law* § 594 (2008); *cf. State v. Lange*, 497 N.W.2d 83, 85 (N.D.1993) (defendant has burden of establishing collateral estoppel branch of double jeopardy).

[¶ 7] This Court has not addressed whether a sanction imposed by a juvenile drug court for violation of its rules precludes, on double jeopardy grounds, further juvenile court delinquency proceedings based on the same conduct. Nor have we found a decision from another jurisdiction that specifically addresses the issue. *See Brown v. State*, 409 Md. 1, 971 A.2d 932, 936–37 (2009) (defendant failed to preserve on appeal argument that imposition of sentence for violating drug court rule followed by subsequent violation of probation for same act after drug court sanction had been served violated double jeopardy rule against multiple punishment for same offense).

[¶ 8] Our analysis begins with a brief overview of the juvenile drug court program. On June 24, 2008, O.F. was adjudicated a delinquent and unruly child based on conduct occurring before that date and was ordered to participate in the juvenile drug court program, a permissible option for disposition under N.D.C.C. § 27–20–31(7). "[I]ntense judicial and probation supervision" plays an integral part of the juvenile drug court program and the juvenile drug court may impose "sanctions and incentives" for compliance with program rules. N.D.C.C. § 27–20–02(14). Under the statutory scheme, the juvenile drug court program is a form of intensified probation with certain conditions imposed for a delinquent child to remain eligible for participation in the program. *See Juvenile Drug Court Program Manual*, North Dakota Juvenile Court System, at 19, 29–30 (Revised July 2007) (discussing individualized juvenile drug court accountability program plans and considerations for termination of participant from the program). The juvenile drug court and its duties of supervision over a participant is analogous to a district court and its duties of supervision over a probationer under N.D.C.C. § 12.1–32–07. We perceive no substantive difference between a sanction imposed on a participant by a juvenile drug court for violation of the program's rules and revocation of probation by a district court for a defendant's violation of a condition of probation.

[¶ 9] This Court has recognized that "'[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution,'" *State v. Olson*, 2003 ND 23, ¶ 14, 656 N.W.2d 650 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)), and courts have long held "the fact that one act formed the basis for both [a] criminal conviction and [a] probation revocation does not violate double jeopardy." *Merry v. State*, 752 P.2d 472, 475 (Alaska Ct.App.1988). In *State v. Gautier*, 871 A.2d 347, 361 (R.I. 2005), the court explained:

[A] probation-revocation hearing is considered a continuation of the original prosecution for which probation was imposed—in which the sole purpose is to determine whether a criminal defendant has breached a condition of his existing probation, not to convict that individual of a new criminal offense. *State v. Bourdeau,* 448 A.2d 1247, 1248 (R.I. 1982). Consequently, it is black letter law that jeopardy does not attach to probation-revocation proceedings, because " 'these proceedings are not designed to punish [criminal defendants] for violation of a criminal law.' " *Hardy v. United States,* 578 A.2d 178, 181 (D.C. 1990) (quoting *Eighteenth Annual Review of Criminal Procedure,* 77 Geo. L.J. 489, 880 (1989)). *See [State v.] Chase,* 588 A.2d [120], 122 [(R.I.1991)] ("a defendant is not twice placed in jeopardy for the same offense when the facts litigated at [a probation-revocation] hearing are later used to support a criminal prosecution").

*See also, e.g., In re Coughlin,* 16 Cal.3d 52, 127 Cal.Rptr. 337, 545 P.2d 249, 255 (1976) (probation revocation hearing was not a "criminal prosecution, nor was it intended to authorize criminal punishment" because "the sole consequence of revocation of probation is that the offender must commence to serve a term for an offense of which he *previously* was properly convicted"); *Johnson v. United States,* 763 A.2d 707, 711 (D.C.Ct.App.2000) ("Because probation revocation proceedings are not criminal prosecutions, ... and any consequent revocation does not punish the defendant for any crime charged subsequent to the imposition of probation, ... a probation revocation hearing cannot be the basis for a claim of either multiple prosecution or multiple punishment" (internal quotation and citation omitted)); *State v. Quarles,* 13 Kan.App.2d 51, 761 P.2d 317, 320 (1988) ("double jeopardy does not apply to proba-

tion revocation proceedings because probation revocation proceedings are not essentially criminal in nature"); *Matter of Lucio F.T.,* 119 N.M. 76, 888 P.2d 958, 960 (Ct. App.1994) (double jeopardy does not apply to revocation of juvenile's probation because revocation "relates back to [the] original delinquent act and replaces the original disposition"); *Commonwealth v. Johnson,* 967 A.2d 1001, 1005 (Pa.Super.Ct.2009) ("Revocation of probation and resentencing does not implicate double jeopardy"); G. Blum, Annot., *Determination that state failed to prove charges relied upon for revocation of probation as barring subsequent criminal action based on same underlying charges,* 2 A.L.R. 5th 262, § 6 (1992); 22 C.J.S. *Criminal Law* § 273 (2006). It follows that a juvenile's double jeopardy rights are not violated when the facts used to impose a sanction by a juvenile drug court are later used to support an adjudication of delinquency.

[¶ 10] Here, the juvenile drug court and judicial referee did not adjudicate O.F. delinquent, but sanctioned him for violating program rules by requiring that he complete six additional hours of community service. Jeopardy did not attach to the sanction proceedings, and this Court has held that upon revocation of probation, an extension of the probation period does not subject a defendant to multiple punishment for the same offense. *See State v. Kensmoe,* 2001 ND 190, ¶ 13, 636 N.W.2d 183. We conclude O.F.'s double jeopardy rights were not violated by the juvenile court's adjudication of delinquency premised on evidence of the same conduct which formed the basis for the sanction imposed by the juvenile drug court.

### III

[¶ 11] O.F. argues the juvenile court erred in refusing to recognize a parent-child testimonial privilege that would

prohibit his mother from testifying against him in the delinquency proceedings.

[¶ 12] Rule 501, N.D.R.Ev., addresses testimonial privileges and provides:

> Except as otherwise provided by constitution or statute or by these or other rules promulgated by the Supreme Court of this State, no person has a privilege to:
>
> (1) refuse to be a witness;
>
> (2) refuse to disclose any matter;
>
> (3) refuse to produce any object or writing; or
>
> (4) prevent another from being a witness or disclosing any matter or producing any object or writing.

O.F. acknowledges there is no express provision in the constitution or in any statute or rule for a parent-child testimonial privilege, but argues we should recognize a parent-child testimonial privilege under "the privacy and liberty rights contained in the North Dakota Constitution." We reject O.F.'s argument for three reasons.

[¶ 13] First, O.F. relies on three New York lower court decisions in which a limited form of parent-child testimonial privilege was derived from the contours of the state constitution. *See People v. Hilligas,* 175 Misc.2d 842, 670 N.Y.S.2d 744 (1998); *People v. Fitzgerald,* 101 Misc.2d 712, 422 N.Y.S.2d 309 (Westchester County Ct.1979); *Application of A and M,* 61 A.D.2d 426, 403 N.Y.S.2d 375 (N.Y.App. Div.1978). The New York lower court decisions clearly represent the minority rule. *See* K. Korell, Annot., *Testimonial privilege for confidential communications between relatives other than husband and wife—state cases,* 62 A.L.R.5th 629, §§ 2–10 (1998), and cases collected therein. In rejecting the parent-child testimonial privilege, the court in *In re Grand Jury,* 103 F.3d 1140, 1147, 1148 n. 15 (3rd Cir.1997), observed that all "federal Courts of Appeals that have addressed the issue have uniformly declined to recognize a parent-child privilege" and that "New York's inferior courts are the only state courts which have judicially recognized a parent-child privilege." As the court pointed out in *In re E.F.,* 740 A.2d 547, 549 (D.C.Ct.App. 1999), "the experience of other jurisdictions in almost uniformly rejecting a parent-child privilege of the scope appellant seeks is strong reason to reject that bar to relevant testimony."

[¶ 14] Second, even if North Dakota recognized the testimonial privilege, it is doubtful O.F. would have standing to raise the issue because his mother would be the one compelled to testify. *See, e.g., United States v. Anderson,* 39 F.3d 331, 350 (D.C.Cir.1994), *abrogated on other grounds, Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) (defendant spouse lacks standing to challenge district court's decision to compel witness spouse to testify); *United States v. Red Elk,* 955 F.Supp. 1170, 1178 (D.S.D.1997) (assuming parent-child privilege existed, "defendant has no standing to assert the privilege because he was not the person subpoenaed to testify before the grand jury"); *Tootle v. Seaboard Coast Line R.R. Co.,* 447 So.2d 1009, 1010 (Fla. Ct.App.1984) ("only the person being compelled to testify who enters a protest on his own or through the government, has standing to challenge the compulsion of his testimony"); *People v. Wood,* 447 Mich. 80, 523 N.W.2d 477, 482 (1994) (criminal defendant lacks standing to challenge his conviction based on a third party's right to claim a testimonial privilege at defendant's trial). There is no evidence in the record indicating O.F.'s mother would claim a parent-child testimonial privilege if she were called to testify.

[¶ 15] Third, this Court does not adopt rules by opinion in litigated appeals. *See*

*State v. Osier*, 1997 ND 170, ¶ 5 n. 1, 569 N.W.2d 441. The Legislature or the Joint Procedure Committee "is institutionally better equipped to perform the balancing of the competing policy issues required in deciding whether the recognition of a parent-child privilege is in the best interests of society." *In re Grand Jury*, 103 F.3d at 1154.

[¶ 16] We conclude the juvenile court did not err in refusing to recognize a parent-child testimonial privilege in this case.

## IV

[¶ 17] The State requests double costs and attorney fees under N.D.R.App.P. 38 because it claims O.F.'s appeal is frivolous. Because both issues raised by O.F. in the appeal are colorable questions of first impression in this jurisdiction, we conclude the appeal is not frivolous and deny the State's request. *See B.F.*, 2009 ND 53, ¶ 17, 764 N.W.2d 170.

## V

[¶ 18] We affirm the juvenile court order.

[¶ 19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.