Rel: May 1, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

———————————————

## CR-2025-0412

———————————————

## T.L.W.

### v.

## State of Alabama

## Appeal from Mobile Juvenile Court
## (JU-23-1374.09)

ANDERSON, Judge.

T.L.W. appeals her delinquency adjudication in the Mobile Juvenile Court for the delinquent act of third-degree escape, § 13A-10-33, Ala. Code 1975. She claims that the juvenile court erred when it denied her motion to dismiss the delinquency petition on double-jeopardy grounds.

This argument fails, however, and the judgment of the juvenile court is affirmed.

Facts and Procedural History

In October 2023, the juvenile court adjudicated T.L.W. delinquent for committing the delinquent act of third-degree domestic violence, and, as part of T.L.W.'s sentence, the juvenile court placed her on probation. (C. 14-15.) Thereafter, T.L.W. escaped from juvenile-detention officers during a court-ordered mental-health appointment and remained at large for approximately one month. (R. 5-6; Supp. R. 4, 11.) Once she was captured, T.L.W.'s juvenile probation officer filed a petition to revoke her probation, alleging that she had committed the new offense of escape. (C. 29, 54.) The State later filed a delinquency petition charging T.L.W. with second-degree escape.[1] (C. 5.)

The juvenile court addressed the revocation and delinquency petitions during an April 8, 2025, hearing. At that hearing, T.L.W. admitted to violating the conditions of her juvenile probation but denied

---

[1]The juvenile court later amended the charge against T.L.W. to third-degree escape, at the State's request. (R. 4; Supp. R. 2-3, 6.)

the allegations in the delinquency petition.[2] (Supp. R. 2, 4-6.) The juvenile court accepted T.L.W.'s admission, found that she was "in violation of [her] probation," and committed her to the custody of the Alabama Department of Youth Services ("DYS") for mental-health treatment.[3] (C. 22-23, 47; Supp. R. 6.) After admitting to the probation violation, and during the same hearing, T.L.W. moved to dismiss the delinquency petition under § 12-15-213(c), Ala. Code 1975, arguing that the petition violated her double-jeopardy rights because she had

---

[2]A copy of the revocation petition is not included in the record on appeal, but the reporter's transcripts indicate that both the petition to revoke probation and the delinquency petition were based on T.L.W.'s escape from custody. (R. 5; Supp. R. 4-6.)

[3]The juvenile-court referee's written findings and recommendation concerning the April 8, 2025, hearing contains a checked box reading "adjudicated delinquent." (C. 22.) The hearing transcript, however, indicates that the referee concluded that T.L.W. had violated the conditions of her probation but did not adjudicate her delinquent of third-degree escape. (Supp. R. 6.) This Court observes that the form used by the referee did not contain any check-box option for a violation of probation. Additionally, a later order indicated that T.L.W. denied the allegations in case number JU-2023-1374.09, the case in which she was charged with third-degree escape. See note 1, supra. The juvenile court did not adjudicate T.L.W. delinquent based on the third-degree escape until May 9, 2025, when T.L.W. admitted to the charge. (C. 22, 47-48; R. 1-5.)

admitted to violating her probation. (Supp. R. 6-7.) The juvenile court requested additional briefing on the issue. (Supp. R. 8-10.)

After considering the parties' legal arguments, the juvenile court entered an order denying T.L.W.'s motion to dismiss. (C. 44-46.) The court noted that "there are two simultaneously pending proceedings, one in which the State alleges there is a violation of probation terms ordered during a previous delinquency proceeding, and another based on a new charge of Escape." (C. 44-45.) A revocation proceeding, the juvenile court explained, "is 'not a stage of a criminal prosecution,'" whereas a delinquency proceeding "is a criminal prosecution." (C. 45.) For those reasons, the juvenile court concluded that double jeopardy "does not apply to simultaneous or subsequent probation revocation proceedings based on a new charge." (C. 45.)

During a May 2025 hearing, T.L.W. admitted to the delinquent act of third-degree escape, <u>see</u> note 1, supra, but reserved the double-jeopardy issue for appeal. (R. 1-5.) The juvenile court accepted T.L.W.'s admission, adjudicated her delinquent of third-degree escape, and committed her to DYS custody. (C. 48; R. 5.) This appeal followed.

4

Discussion

On appeal, T.L.W. argues that the juvenile court legally erred when it denied her motion to dismiss the delinquency petition on double-jeopardy grounds. She specifically argues that § 12-15-213(c)'s text, when considered in the context of other statutory provisions, expands double-jeopardy protections to include petitions to revoke juvenile probation and that, in her case, jeopardy attached once she admitted to the probation-revocation petition that was based on the same act of escape for which she was also charged by way of a delinquency petition. The State disagrees, arguing that the same legal principles applicable to adult-probation-revocation proceedings apply in the juvenile context. Moreover, the State contends that the statutes cited by T.L.W. do not indicate that the Legislature intended to expand double-jeopardy protections in juvenile matters to include probation-violation proceedings and that, under settled precedent, jeopardy did not attach when T.L.W. admitted to violating her probation conditions by escaping from custody.

Given those arguments, the issues before us are (1) whether the statutory provisions T.L.W. relies upon expand double-jeopardy protections to include juvenile-probation-revocation proceedings and (2)

whether our precedents concerning the applicability of the Double Jeopardy Clause to adult-probation-revocation proceedings also apply to juvenile-probation-revocation proceedings. As explained more fully below, we conclude that § 12-15-213(c) does not expand double-jeopardy protections to admissions made during juvenile-probation-revocation proceedings, that our precedents concerning the applicability of the Double Jeopardy Clause to adult-probation-revocation proceedings also apply to juvenile-probation-revocation proceedings, and that, therefore, the juvenile court did not err when it denied T.L.W.'s motion to dismiss the delinquency petition for third-degree escape on double-jeopardy grounds.

I.

T.L.W.'s argument on appeal is twofold. First, she contends that § 12-15-213(c) bars a subsequent delinquency petition once a juvenile admits to a violation of probation based on the underlying criminal conduct charged in the delinquency petition. (T.L.W.'s brief at 12-16.) To support that assertion, T.L.W. cites § 12-15-213(c)'s use of the phrase "the petition," contending that, because the Legislature did not specify the type of petition, the term necessarily includes juvenile-probation-

revocation petitions. (T.L.W.'s brief at 13-16.) Second, T.L.W. claims that § 12-15-213(c), when read in conjunction with §§ 12-15-132(c) and (e), Ala. Code 1975, establishes that the Legislature intended to expand double-jeopardy protections to include juvenile-probation-revocation petitions. (T.L.W.'s brief at 17-21.) We disagree.

Initially, we find T.L.W.'s construction of § 12-15-213(c) to be incorrect. That provision reads

> "Criminal proceedings and other juvenile proceedings based upon the offense alleged in the petition or an offense based upon the same conduct are barred where the juvenile court has begun taking evidence or where the juvenile court has accepted from the child a plea of guilty to the petition."

"'"In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature."'" Craft v. McCoy, 312 So. 3d 32, 37 (Ala. 2020) (quoting Cockrell v. Pruitt, 214 So. 3d 324, 331-32 (Ala. 2016), quoting in turn DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So. 2d 270, 275 (Ala. 1998)).

> "'"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'"

7

Id. (quoting Cockrell, 214 So. 3d at 332, quoting in turn City of Prattville v. Corley, 892 So. 2d 845, 848 (Ala. 2003)). Appellate courts "review de novo a question of law involving statutory construction." Ex parte Sacred Heart Health Sys., Inc., 155 So. 3d 980, 985 (Ala. 2012).

"If the language of a statute is not 'plain' or is ambiguous, then -- and only then -- may a court construe or interpret it to determine the legislature's intent." Deutsche Bank Nat'l Tr. Co. v. Walker Cnty., 292 So. 3d 317, 326 (Ala. 2019). A portion of a statute "'is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses.'" S&S Distrib. Co. v. Town of New Hope, 334 So. 2d 905, 907 (Ala. 1976) (quoting State ex rel. Neelen v. Lucas, 24 Wis. 2d 262, 267, 128 N.W.2d 425, 428 (1964)). However, "'[b]ecause the meaning of statutory language depends on context, a statute is to be read as a whole … [and s]ubsections of a statute are in pari materia.'" Mitchell v. State, 316 So. 3d 242, 247 (Ala. Crim. App. 2019) (quoting Ex parte Jackson, 614 So. 2d 405, 406 (Ala. 1993)).

We begin, therefore, by noting that § 12-15-213(a) applies to cases involving a "child charged with a delinquent act or who is alleged to be in need of supervision" and requires that such children "shall be accorded

8

the rights and privileges afforded by the Constitution of the United States and the Constitution of Alabama of 1901." (Emphasis added.) A "delinquent act" is defined as an "act committed by a child that is designated a violation, misdemeanor, or felony offense pursuant to the law of the municipality, county, or state in which the act was committed or pursuant to federal law." § 12-15-102(6), Ala. Code 1975. On the other hand, "probation" is defined as the "legal status created by order of the juvenile court following an adjudication of delinquency or in need of supervision whereby a child is permitted to remain in a community subject to supervision and return to the juvenile court for violation of probation at any time during the period of probation." § 12-15-102(21) (emphasis added).

T.L.W.'s argument hinges on treating subsection (c) of § 12-15-213 as being wholly independent of subsections (a) and (b). T.L.W. maintains that references to "the petition" in subsection (c) refer to any type of juvenile petition -- including petitions to revoke probation -- rather than being limited to petitions initiating the two types of juvenile proceedings specifically referenced in subsection (a): those involving delinquency and children in need of supervision. Yet, as stated previously, this Court must

9

read and consider subsections of a statutory provision in pari materia. Mitchell, 316 So. 3d at 247 (quoting Ex parte Jackson, 614 So. 2d at 406). In other words, subsections of a statutory provision "'should be construed together to ascertain the meaning and intent of each.'" Ex parte Jackson, 614 So. 2d at 406 (quoting McCausland v. Tide-Mayflower Moving & Storage, 499 So. 2d 1378, 1382 (Ala. 1986)).

> "'"The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. … In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses … and words are given their plain and usual meaning. … Moreover, just as statutes dealing with the same subject are in pari materia and should be construed together, … parts of the same statute are in pari materia and each part is entitled to equal weight."'"

Craft, 312 So. 3d at 37 (quoting Cockrell, 214 So. 3d at 332, quoting in turn First Union Nat'l Bank of Fla. v. Lee Cnty. Comm'n, 75 So. 3d 105, 111-12 (Ala. 2011)). "'When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context.'" Alabama Dep't of Revenue v. Greenetrack, Inc., 369 So. 3d 640, 650 (Ala. 2022) (quoting Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So. 2d 513, 517 (Ala. 2003)). Indeed, "our rules of statutory construction direct us to look at the statute as a whole to determine the meaning of

certain language that is, when viewed in isolation, susceptible to multiple reasonable interpretations." Ex parte Alfa Fin. Corp., 762 So. 2d 850, 853 (Ala. 1999).

At bottom, by latching on to the phrase "the petition" in § 12-15-213(c), T.L.W. asks this Court to find ambiguity where none exists. Construing § 12-15-213 as a whole, as we must, there is no ambiguity as to what the Legislature intended. While it is true that proceedings in juvenile court may be initiated by several different types of petitions, references to "the petition" in subsections (b) and (c) of § 12-15-213 must be informed by subsection (a)'s focus on proceedings initiated by petitions to adjudicate children delinquent or in need of supervision.

To be sure, "[d]elinquency, child in need of supervision, and dependency cases and proceedings" are all "initiated by the filing of a petition by the juvenile court intake officer." § 12-15-120(a), Ala. Code 1975. In addition, proceedings to revoke probation or aftercare are initiated "by the filing of a petition entitled 'petition to revoke probation' or 'petition to revoke aftercare.'" § 12-15-132(b), Ala. Code 1975.[4] But

---

[4]Other statutory provisions also reference various parties' ability to file a "motion" seeking revocation of a probation order, see § 12-15-221(a), Ala. Code 1975.

11

only by a strained or tortured reading of § 12-15-213 could this Court find that the Legislature intended to address two specific types of petitions in subsection (a), yet -- for an unknown reason -- intended to change course and reference all juvenile proceedings initiated by petition simply by using the term "the petition" in subsection (c).

We also must give effect to "'"the words as written by the legislature."'" Craft, 312 So. 3d at 37 (quoting Cockrell, 214 So. 3d at 331, quoting in turn DeKalb Cnty. LP Gas Co., 729 So. 2d at 275). Notably, in subsection (c), the Legislature did not refer to "any" petition, but used the definite article "the" to identify which petition it was referencing. The only sensible reading of the Legislature's reference to "the petition" in this context is as a reference to a petition previously referenced in the statute itself. Read in pari materia with subsection (a), this is plainly a reference to the delinquency or child-in-need-of-supervision petition initiating a proceeding governed by § 12-15-213(a). See Martin v. Martin, 329 So. 3d 1242, 1245 (Ala. 2020) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107-11 Thompson/West (2012)) ("It is a well-established principle of statutory

interpretation that '[t]he expression of one thing implies the exclusion of others.'"). For these reasons, we reject T.L.W.'s argument

T.L.W. cites State v. S.-Q.K., 292 Or. App. 836, 426 P.3d 659 (2018), to support her interpretation of § 12-15-213(c), but that decision by the Oregon Court of Appeals is unpersuasive. The statute at issue there did not reference a particular type of juvenile proceeding but, instead, used the term "adjudicatory hearing" to identify when jeopardy attaches and specifically provided that

> "proceedings in adult criminal court and other juvenile court adjudicatory proceedings based on an act alleged in a petition or citation to have been committed by a child, ward, youth or adjudicated youth or allegations arising out of the same conduct are barred when the juvenile court judge or referee has begun taking evidence in an adjudicatory hearing or has accepted a child['s] … admission … to the allegations of the petition or citation."

Or. Rev. Stat. § 419A.190. Unlike § 12-15-213, the Oregon statute contained no language limiting the statute's scope to particular types of juvenile proceedings. Compare § 12-15-213(a), Ala. Code 1975, with Or. Rev. Stat. § 419A.190. Additionally, the court in S.-Q.K. did not find that the meaning of the Oregon statute was clear from its text, relying instead upon legislative history. 292 Or. App. at 840-46, 426 P.3d at 661-65. Finally, probation-revocation proceedings in an Alabama juvenile court

13

occur only <u>after</u> "adjudicatory proceedings" have concluded, as Alabama law defines "probation" as a "legal status created by order of the juvenile court following an adjudication of delinquency or in need of supervision," <u>see</u> § 12-15-102(21), and it further restricts a juvenile court's authority to enter an order of probation to two types of adjudicatory proceedings, and only then when a child is determined to be in need of care or rehabilitation, <u>see</u> § 12-15-215(c), Ala. Code 1975.

T.L.W. also contends that subsections (c) and (e) of § 12-15-132, Ala. Code 1975, evidence the Legislature's intent to expand double-jeopardy protections to juvenile-probation-revocation proceedings. Section 12-15-132(c) provides that "[p]robation or aftercare revocation proceedings shall require clear and convincing evidence. In all other respects, proceedings to revoke probation or aftercare shall be governed by the procedures, safeguards, and rights and duties applicable to delinquency and child in need of supervision cases contained in this chapter." T.L.W. contends that the "word 'all' as it is used in the statute cannot be given any meaning other than its all-inclusive definition." (T.L.W.'s brief at 18.) According to her, this indicates that "the legislature has extended all procedures, safeguards, rights and duties, including the

14

protection against double jeopardy, to juvenile probation petitions." (T.L.W.'s brief at 18.) T.L.W. also points to the text of § 12-15-132(e) providing that a probation violation "for a child in need of supervision is not an adjudication of delinquency," as evidence that the Legislature intended to extend double-jeopardy protections to juvenile-probation-revocation proceedings. (T.L.W.'s brief at 18.) In particular, she argues that, because "no similar law exists for an adjudication in a revocation of probation petition where the underlying charge is not a [child-in-need-of-supervision] petition," then a "juvenile adjudication for a violation of probation is an adjudication of delinquency." (T.L.W.'s brief at 18.) Once again, we disagree.

Section 12-15-132(a) speaks to the nature of a probation-revocation proceeding in juvenile court. First, that subsection recognizes that any order of probation is entered "incident to an adjudication as a delinquent child or a child in need of supervision," the same two types of proceedings to which § 12-15-213 applies. Moreover, that subsection clearly frames the focus of a juvenile-probation-revocation petition on obtaining "a revocation of the order" of probation, not on whether an adjudication of delinquency, or child in need of supervision, is warranted. § 12-15-132(a).

15

At the conclusion of a juvenile-probation-revocation proceeding, if the child is found to have violated the conditions of his or her probation, "the juvenile court may extend the period of probation or aftercare or make any other order of disposition specified for a child adjudicated delinquent or in need of supervision." § 12-15-132(d).

As for § 12-15-132(e), that subsection makes clear that a child in need of supervision -- a form of juvenile adjudication that is not overtly criminal in nature[5] -- does not become a delinquent child -- a form of adjudication for conduct that is overtly criminal in nature[6] -- merely due to violations of the terms and conditions of an order of probation entered by a juvenile court. That is, because an order of probation may be entered following either type of adjudication, § 12-15-132(e) clarifies that the violation of an order of probation by a child adjudicated as being in need of supervision does not constitute a "delinquent act," making the child a "delinquent child" as those term are defined in § 12-15-102(6) and (7). Of course, for children placed on juvenile probation following adjudications of delinquency, that provision is unnecessary and inapplicable. See Stiff

---

[5]See § 12-15-102(4), Ala. Code 1975.

[6]See § 12-15-102(6) and (7), Ala. Code 1975.

16

v. Equivest Fin., LLC, 362 So. 3d 141, 147 (Ala. 2022) (quoting League of Women Voters v. Renfro, 290 So. 2d 167, 169 (Ala. 1974)) ("'Where possible, statutes should be resolved in favor of each other to form one harmonious plan and give uniformity to the law.'").

Accordingly, despite T.L.W.'s arguments to the contrary, we conclude that § 12-15-213(c) does not extend double-jeopardy protections to juvenile-delinquency proceedings involving delinquent acts that were previously the subject of juvenile-probation-revocation proceedings.

## II.

In its brief, the State argues that this Court's precedents regarding double jeopardy and adult-probation-revocation proceedings apply to juvenile probation-revocation proceedings. (State's brief at 25-29.) This Court has not previously addressed whether our precedents concerning adult-probation-revocation proceedings and double jeopardy apply in the juvenile context.

The question whether jeopardy attaches in a juvenile-delinquency proceeding is well settled. In Breed v. Jones, 421 U.S. 519, 521-27 (1975), the United States Supreme Court considered whether a juvenile's double-jeopardy rights were violated when he was tried as an adult for a crime

17

for which a juvenile court had already found him delinquent. Holding that the juvenile had been subjected to double jeopardy, the Court explained that it could not "conclude ... that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law." Id. at 528-29. It further clarified that "the risk to which the term jeopardy refers is that traditionally associated with 'actions intended to authorize criminal punishment to vindicate public justice.'" Id. at 529 (quoting United States ex rel. Marcus v. Hess, 317 U.S. 537, 548-49 (1943)).

In Smith v. State, 368 So. 2d 298, 301 (Ala. Crim. App. 1978), this Court synthesized the operative rule set out in the Breed decision: "Any adjudicatory finding of delinquency in the juvenile court that the juvenile had violated a criminal statute would cause jeopardy to attach." Since then, we have reaffirmed this rule on multiple occasions. See, e.g., M.L.W. v. State, 372 So. 3d 241, 244 (Ala. Crim. App. 2022); Cruse v. State, 489 So. 2d 694, 696 (Ala. Crim. App. 1986); Driver v. State, 456 So. 2d 1140, 1141-42 (Ala. Crim. App. 1984).

This Court has also established, at least in the adult context, that jeopardy does not attach in noncriminal actions. Namely, "Alabama has

18

consistently held that the protection afforded by the Double Jeopardy Clause is not applicable to administrative proceedings." Ex parte K.H., 700 So. 2d 1201, 1205 (Ala. Crim. App. 1997). That is, "'"[t]he Double Jeopardy Clause does not apply to actions that are not essentially criminal. … Nor does it apply to disciplinary, parole, probation, or bond revocation hearings, because they are administrative proceedings."'" Id. (quoting Coleman v. State, 642 So. 2d 532, 533-34 (Ala. Crim. App. 1994)).

We have not addressed, however, whether a juvenile court's determination that a juvenile has violated a condition of probation by committing a new delinquent act is the type of adjudicatory proceeding to which jeopardy attaches. In other words, we have no precedent establishing whether a juvenile-probation-revocation proceeding should be treated the same as an adult-probation-revocation proceeding in terms of whether jeopardy attaches at such a proceeding.

Other jurisdictions, however, have held that jeopardy does not attach during juvenile-probation-revocation proceedings. For example, in In re O'neal, 160 N.C. App. 409, 585 S.E.2d 478 (2003), the North Carolina Court of Appeals considered whether double-jeopardy

19

protections applied to juvenile-probation-revocation proceedings. There, the juvenile was placed on probation for one year after being adjudicated delinquent for committing a misdemeanor assault. 160 N.C. App. at 410, 595 S.E.2d at 479. A juvenile-court counselor filed the equivalent of a revocation petition alleging that the juvenile had committed several probation violations, including becoming "physically aggressive" with another child. 160 N.C. App. at 410-11, 585 S.E.2d at 479-80. The juvenile admitted to the allegations contained in the revocation petition, and the juvenile court concluded that he had willfully violated his probation conditions and placed him on probation for another year. 160 N.C. App. at 411, 585 S.E.2d at 480.

Thereafter, the State filed a delinquency petition alleging that the juvenile had committed misdemeanor assault based the same incident. Id. The juvenile moved to dismiss the petition, arguing that the prosecution violated his double-jeopardy rights. Id. The juvenile court denied his motion and ultimately entered an adjudication finding the juvenile delinquent of simple assault. Id.

The juvenile's sole contention on appeal was that the juvenile court had erred in denying his motion to dismiss because he had admitted to

the same underlying conduct at his revocation hearing. 160 N.C. App. at 411-12, 585 S.E.2d at 480. The appellate court noted that the United States Supreme Court, in Breed, "only extended double jeopardy protection to adjudicatory or delinquency hearings," explained that a "'probation violation hearing is not a criminal prosecution,'" and recognized that "[i]t is well established that double jeopardy protections do not apply to probation revocation hearings." 160 N.C. App. at 412-13, 585 S.E.2d at 480-81 (quoting State v. Monk, 132 N.C. App. 248, 252, 511 S.E.2d 332, 334 (1999)). The court held that jeopardy did not attach when the juvenile admitted to the underlying conduct during his probation-revocation hearing. 160 N.C. App. at 413, 585 S.E.2d at 481. It reasoned that, in the juvenile's case, the juvenile court had found by a preponderance of the evidence only that the juvenile violated his probation conditions, not that the juvenile was in fact delinquent. 160 N.C. App. at 413-14, 585 S.E.2d at 481.

The North Dakota Supreme Court reached a similar conclusion in In re O.F., 773 N.W.2d 206 (N.D. 2009). There, the juvenile was initially adjudicated delinquent and placed under the supervision of the juvenile drug court. Id. at 207. Later, law-enforcement officers cited the juvenile

21

for violating his curfew, and, upon returning home, he killed his family's pet kitten. Id. The drug court then recommended that the juvenile be sanctioned; a juvenile referee followed that recommendation and required the juvenile to complete six additional hours of community service. Id.

The State then filed a delinquency petition alleging that the juvenile had mistreated animals, in violation of N.D. Cent. Code § 36-21.1-02(1), and that he was an unruly child for violating his curfew. Id. The juvenile moved to dismiss the charges, arguing that the prosecution for mistreating an animal and for violating curfew -- the same conduct for which the juvenile drug court had sanctioned him -- violated his double-jeopardy rights. Id. The juvenile court denied the motion to dismiss, and the juvenile pleaded guilty to the charges while reserving his right to appeal the court's denial of his motion to dismiss. Id. On appeal, he raised the same argument asserted in his motion to dismiss. Id.

The North Dakota Supreme Court initially observed that there "is no substantive difference between a sanction imposed on a participant by a juvenile drug court for violation of the program's rules and revocation

22

of probation by a district court for a defendant's violation of a condition of probation." Id. at 208. It then noted that "'"probation revocation … is not a stage of a criminal prosecution,"'" and that "courts have long held 'the fact that one act formed the basis for both [a] criminal conviction and [a] probation revocation does not violate double jeopardy.'" Id. (quoting State v. Olson, 656 N.W.2d 650, 654 (N.D. 2003), and Merry v. State, 752 P.2d 472, 475 (Alaska Ct. App. 1988)). The court further explained that a probation-revocation hearing "'is considered a continuation of the original prosecution for which probation was imposed[,] … [and] the sole purpose is to determine whether a criminal defendant has breached a condition of his existing probation, not to convict that individual of a new criminal offense.'" Id. at 209 (quoting State v. Gautier, 871 A.2d 347, 361 (R.I. 2005)). "'Consequently,'" it continued, "' jeopardy does not attach to probation-revocation proceedings, because "these proceedings are not designed to punish [criminal defendants] for violation of a criminal law."'" Id.

The court held that the juvenile's double-jeopardy rights were not violated by the juvenile court's delinquency adjudication, even though it was premised on the same conduct that had previously formed the basis

23

of the drug court's sanction. Id. It reasoned that, rather than adjudicating the juvenile delinquent, the drug court and the juvenile referee had only sanctioned the juvenile for violating program rules. Id. Accordingly, jeopardy had not attached at the sanction proceedings. Id.

We find such reasoning persuasive and conclude that juvenile-probation-revocation proceedings are not the type of adjudicatory proceedings at which jeopardy attaches. In T.L.W.'s case, the probation-revocation proceedings concerned T.L.W.'s punishment for her previous delinquency adjudication for third-degree domestic violence -- i.e., the juvenile court's purpose was to determine whether T.L.W. had violated a condition of her probation, not to adjudicate the alleged delinquent act of third-degree escape. In fact, the juvenile court did not adjudicate T.L.W. delinquent of third-degree escape at the April 8, 2025, hearing; instead, it found by clear-and-convincing evidence, based on her admission, that T.L.W. was "in violation of [her] probation" when she escaped from custody. (Supp. R. 6.) Because the probation-revocation proceedings were noncriminal in nature, relating to T.L.W.'s legal status as being "subject to supervision and return to the juvenile court for violation of probation at any time during the period of probation," see § 12-15-102(21), jeopardy

24

did not attach when T.L.W. admitted to violating the conditions of her probation by escaping from custody.

T.L.W. argues that, "[i]n contrast to a criminal case, where a revocation of probation implements an existing but suspended sentence, a juvenile probation adjudication can result in an extended period of probation, or 'any other disposition specified for a child adjudicated delinquent or in need of supervision.'" (T.L.W.'s brief at 19 (quoting § 12-15-132(d), Ala. Code 1975).) According to her, this "undetermined potential deprivation of liberty," "demonstrates being twice put in jeopardy when both petitions contain the same allegation, and supports the added protections the law grants juvenile revocation of probation proceedings that are not available in adult probation proceedings." (T.L.W.'s brief at 19.) This is not so.

Section 12-15-132(d), Ala. Code 1975, states that if "a child is found to have violated the terms of his or her probation ... pursuant to a revocation hearing, the juvenile court may extend the period of probation ... or make any other order of disposition specified for a child adjudicated delinquent or in need of supervision." While this statute does grant juvenile courts broad discretion to determine the ramifications of a

25

juvenile's probation violation, this discretion does not transform a juvenile-probation-revocation proceeding into the type of adjudicatory hearing for which <u>Breed</u> mandates double-jeopardy protections.

In <u>In re O'Neal</u>, the court addressed this very issue. There, the court acknowledged that, "in adult criminal cases[,] a violation of probation usually results in the activation of a previously imposed sentence," whereas "in juvenile cases a probation violation usually results in a new imposition of probation or even confinement, since there is generally no suspended term of confinement in juvenile cases imposing probation." 160 N.C. App. at 413, 585 S.E.2d at 481. Despite this difference, the court explained, "the better view is to treat a juvenile probation violation as analogous to the revocation of probation in the criminal justice system." <u>Id.</u> This is because the "imposition of a new term of probation, or possibly confinement, in juvenile cases is punishment for the original offense for which the juvenile was adjudicated delinquent" and does not punish "any of the offenses that form the basis of the trial court's determination that a probation violation has occurred." <u>Id.</u> We agree with this reasoning and apply it here.

In sum, we conclude that there is no legitimate reason to view adult-probation-revocation proceedings differently than juvenile-probation-revocation proceedings for purposes of our prior decisions discussing whether the Double Jeopardy Clause applies to such proceedings. To that end, we conclude that a juvenile-probation-revocation proceeding should be treated the same as an adult-probation-revocation proceeding for precedential purposes when analyzing whether jeopardy attaches at such a proceeding.

In this case, the record on appeal reflects that the juvenile court adjudicated T.L.W. delinquent of third-degree domestic violence in October 2023 and placed her on juvenile probation. (C. 14-15.) Afterward, in March 2025, T.L.W. escaped from custody while she was still serving that probationary term for domestic violence. (R. 5-6; Supp. R. 4.) After admitting to the probation violation resulting from that escape, but before the juvenile court adjudicated her delinquent of third-degree escape, the juvenile court ordered that T.L.W. be confined to the custody of DYS for mental-health treatment. (C. 41; Supp. R. 4-6.) Only after the probation-revocation hearing and initial commitment did the juvenile court adjudicate her delinquent of third-degree escape. (C. 48; R. 5.) In

other words, the juvenile court's initial placement of T.L.W. into DYS custody was pursuant to her original domestic-violence adjudication, not as punishment for third-degree escape. Under those circumstances, the Double Jeopardy Clause was not implicated when T.L.W. admitted to the violation of her juvenile probation flowing from her actions constituting third-degree escape. See Ex parte K.H., 700 So. 2d at 1205 (quoting Coleman, 642 So. 2d at 533-34); Woodberry v. State, 625 So. 2d 1159 (Ala. Crim. App. 1993).

## Conclusion

We conclude that the Legislature's enactment of § 12-15-213(c), as well as § 12-15-132(c) and (e), did not expand double-jeopardy protections to include juvenile-probation-revocation proceedings. Instead, we hold that such proceedings serve the same purposes as adult-probation-revocation proceedings, meaning the same double-jeopardy principles that apply to adult-probation-revocation proceedings apply in juvenile probation-revocation proceedings. Accordingly, the judgment of the juvenile court is affirmed.

AFFIRMED.

Windom, P.J., and Cole, J., concur. Minor, J., concurs in part and concurs in the result, with opinion. Kellum, J., concurs in the result.

MINOR, Judge, concurring in part and concurring in the result.

For the reasons stated in Part I of the main opinion, I concur in the Court's judgment. I believe that, in light of this Court's holding in Part I of its opinion, this Court need not address the issue in Part II.